## FARRELL *v.* LOCKHART.

No. 170. Submitted March 9, 1908.—Decided May 18, 1908.

Ground embraced in a mining location may become part of the public domain so as to be subject to another location before the expiration of the statutory period for performing annual labor if, at the time when the second location is made, there has been an actual abandonment of the claim by the first locator.

*Lavignino* v. *Uhlig,* 198 U. S. 443, qualified so as not to exclude the right of a subsequent locator on an adverse claim to test the lawfulness of a prior location of the same ground upon the contention that at the time such prior location was made the ground embraced therein was covered by a valid and subsisting mining claim.

Where three mining locations cover the same ground and the senior locator after forfeiture does not adverse, the burden of proof is on the third locator to establish the invalidity of the second location.

31 Utah, 155, reversed.

THE facts are stated in the opinion.

*Mr. Charles C. Dey* and *Mr. A. L. Hoppaugh* for plaintiff in error.

*Mr. Wilson I. Snyder, Mr. George Sutherland* and *Mr. Bismarck Snyder* for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the court.

In the month of February, 1905, James Farrell, plaintiff in error, as owner of the Cliff lode mining claim, situated in the Uintah mining district, Summit County, Utah, made application in the United States land office at Salt Lake City for a patent, and published the notice required by law. The defendant in error, as the administrator of the estate of John G. Rhodin, filed an adverse claim based upon the location by Rhodin of the ground as the Divide lode mining claim. There-

after; pursuant to Rev. Stat., § 2326, this action was brought in a court of the State of Utah by the administrator of Rhodin in support of said adverse claim.

In the complaint filed by the administrator the right of Rhodin to the Divide was asserted to have been initiated by a location duly made on January 2, 1903. Farrell in his answer asserted a paramount right by reason of his ownership of the Cliff claim, averring that it had been initiated by a location made on August 1, 1901, seventeen months prior to the location of the Divide by Rhodin. To the affirmative matter pleaded in the answer of Farrell a general denial was interposed, and it was also averred as follows: Plaintiff "alleges that at the time and date of the attempted location of the said Cliff patented mining claim the ground therein contained was not any part of the open and unclaimed mineral land of the United States, but, on the contrary, the whole thereof, including the point and place of discovery of said alleged Cliff mining claim, was then embraced and included and contained in a valid and subsisting mining claim, called the South Mountain, then and there the property and in the possession of the predecessors of this plaintiff's intestate; and for the reason that the discovery of said alleged Cliff mining claim was not placed upon unoccupied and unclaimed land of the United States, the alleged location based thereon became absolutely void."

The case was tried by the court, and it was specifically found that the Cliff, the Divide and the South Mountain claims, as located, covered substantially the same ground, and that the place of discovery of the Cliff was within the boundaries of the alleged South Mountain mining claim. It was further specifically found by the court that upon the trial of the action "plaintiff offered evidence (subject to the objection of the defendant that the same was incompetent, immaterial and irrelevant, and that no adverse claim was filed on behalf of the South Mountain lode claim) tending to show that during the month of August, 1900, the ground in controversy herein was

located by W. I. Snyder and Thomas Roscamp, respectively, citizens of the United States, under the name of the South Mountain lode mining claim. That a discovery of a vein was made and notice of location posted, and the boundaries of said claim marked so that the same could be readily traced, and that said notice was in due form, and was duly recorded in the office of the county recorder of Summit County, State of Utah. That no work was ever done on said South Mountain claim, and that said South Mountain claim lapsed and became forfeited for want of work thereon, on December 21, 1901. That no adverse claim was filed on behalf of said South Mountain lode against the application for patent for said Cliff lode mining claim. That on or about the thirteenth day of October, 1902, said Snyder and Roscamp made a deed purporting to convey said alleged South Mountain lode mining claim to said John G. Rhodin."

When it decided the case, the court found that Farrell initiated his ownership of the Cliff claim on August 1, 1901, and performed all the acts required by law in addition to the annual labor required by statute, and that Rhodin initiated on January 2, 1903, his Divide claim. The court decided in favor of the defendant Farrell, and entered a decree adjudging that he was the owner, in possession of the premises in controversy, and entitled to the possession, except as against the paramount title of the United States. The court treated the proof offered on behalf of the plaintiff as to the location of the South Mountain claim for the same ground embraced in the Cliff, made a year prior to the location of the latter claim, as immaterial and irrelevant. Plaintiff duly excepted and appealed to the Supreme Court of the State. That court, in disposing of the appeal, considered solely what it termed the "decisive question" presented by the record, viz., "whether the appellant, as owner of the Divide claim, who, as such, adversed the application for patent, is in position to show and assert that at the time of the location of the Cliff claim the ground located was covered by the South Mountain, a then

valid and subsisting claim; that the discovery point of the Cliff was within the boundaries of the South Mountain; and that, therefore, the locator of the Cliff did not discover a vein or lode on, or make a valid location of, unappropriated and unoccupied mineral lands of the United States, and because thereof his location is and was void, not only against the locators of the South Mountain, but all the world." In deciding this question the court deemed that it was called upon to consider and apply the ruling in *Lavignino* v. *Uhlig,* 198 U. S. 443. Doing so it was recognized that the reasoning in the opinion in that case was broad enough to maintain where on an adverse claim the first or senior locator did not appear to oppose the application for a patent made by a second locator, whose rights in the same ground had been initiated prior to the forfeiture of the senior location, for failure to perform the annual labor required by the statute, a third locator could not be heard to complain that the second locator had inititated his claim upon mining ground which was not at the time open to location. While thus conceding the court considered that the reasoning in question ought to be restricted, because not to do so would cause *Lavignino* v. *Uhlig* to be in conflict with cases decided prior to the decision in that case, and, moreover, would establish a rule in conflict with the practice which had long prevailed in the mining districts, and would therefore create great confusion and uncertainty in respect to mining claims and unsettle rights of property of great value. The court did not at all doubt that *Lavignino* v. *Uhlig* had been correctly decided in view of the issues in that case; but, for the reasons which we have just stated, it held that the ruling in *Lavignino* v. *Uhlig* must be considered as narrowed, so as to apply only to a case where the second location did not embrace the discovery point of the first, but was a mere overlap. Thus applying the ruling in *Lavignino* v. *Uhlig,* the court held that as the location by Farrell of the Cliff claim was made upon substantially the same ground embraced by the South Mountain, and the statutory period for the forfeiture of the South

Mountain claim had not expired, the Cliff claim was not located on ground subject to location, and was void; that as the Divide had been located or relocated after the lapsing of the South Mountain claim, the Divide claim was located on land subject to be appropriated, and was therefore paramount to the second or Farrell location. The judgment of the trial court was therefore reversed and a decree was made in favor of the administrator of Rhodin. 31 Utah, 155. Farrell thereupon sued out this writ of error.

In the argument at bar our attention has been directed to several decisions of the highest courts in some of the mining States or in Territories of the United States where mining prevails—*Nash* v. *McNamara* (Nevada), 93 Pac. Rep. 405, and cases cited—which, in considering the reasoning of *Lavignino* v. *Uhlig*, also attributed to that reasoning, broadly construed, the serious and unfavorable consequences on rights of property suggested by the court below in its opinion. It may not be doubted, unless the reasoning in the *Lavignino case* is to be restricted or qualified, that the grounds upon which the court below rested its conclusions were erroneous. Not doubting at all the correctness of the decision in the *Lavignino case*, especially in view of the issue as to long possession and the operation of the bar of the statute of the State of Utah, which was applied by the court below in that case, and whose judgment was affirmed, we do not pause to particularly reëxamine the reasoning expressed in the opinion in *Lavignino* v. *Uhlig* as an original proposition. We say this, because whatever may be the inherent cogency of that reasoning, in view of the experience of the courts referred to concerning the practice which it was declared had prevailed, in reliance upon what was deemed to be the result of previous decisions of this court, and the effect on vested rights which it was said would arise from a change of such practice, and taking into view the prior decisions referred to, especially *Belk* v. *Meagher*, 104 U. S. 279, as also the more recent case of *Brown* v. *Gurney*, 201 U. S. 184, we think the opinion in the *Lavignino case* should be qualified

so as to not to exclude the right of a subsequent locator on an adverse claim to test the lawfulness of a prior location of the same mining ground upon the contention that at the time such prior location was made the ground embraced therein was covered by a valid and subsisting mining claim. It is to be observed that this qualification but permits a third locator to offer proof tending to establish the existence of a valid and subsisting location anterior to that of the location which is being adversed. It does not, therefore, include the conception that the mere fact that a senior location had been made, and that the statutory period for performing the annual labor had not expired when the second location was made, would conclusively establish that the location was a valid and subsisting location, preventing the initiation of rights in the ground by another claimant, if at the time of such second location there had been an actual abandonment of the original senior location. We say this because—taking into view *Belk* v. *Meagher*, *Lavignino* v. *Uhlig*, and *Brown* v. *Gurney*—we are of the opinion, and so hold, that ground embraced in a mining location may become a part of the public domain so as to be subject to another location before the expiration of the statutory period for performing annual labor, if, at the time when the second location was made, there had been an actual abandonment of the claim by the first locator.

In *Black* v. *Elkhorn Mining Company*, 163 U. S. 445, summing up as to the character of the right which is granted by the United States to a mining locator, after observing that no written instrument is necessary to create the right, and that it may be forfeited by the failure of the locator to do the necessary amount of work, it was said (p. 450):

" (3) His interest in the claim may also be forfeited by his abandonment, with an intention to renounce his right of possession. It cannot be doubted that an actual abandonment of possession by a locator of a mining claim, such as would work an abandonment of any other easement, would terminate all the right of possession which the locator then had.

"An easement in real estate may be abandoned without any writing to that effect, and by any act evincing an intention to give up and renounce the same. *Snell* v. *Levitt*, 110 N. Y. 595, and cases cited at p. 603 of the opinion of Earl, J.; *White* v. *Manhattan Railway Co.*, 139 N. Y. 19. If the locator remained in possession and failed to do the work provided for by statute, his interest would terminate, and it appears to be equally plain that if he actually abandoned the possession, giving up all claim to it, and left the land, that all the right provided by the statute would terminate under such circumstances. . . ."

It remains only to test the correctness of the conclusions of the court below in the light of the principles just announced. Now, it was found by the trial court that the evidence offered tended to show that the South Mountain lode claim was located in August, 1900, *and that no work was ever done on said claim*, and that it became forfeited for want of the annual labor required by the statute on December 31, 1901. Farrell made his location in August, 1901, a year after the South Mountain was located and five months before the expiration of the period when a statutory forfeiture of the South Mountain would have resulted. The offer of proof, therefore, made by the administrator of Rhodin, to show that the South Mountain was a valid and subsisting location when Farrell made the location of the Cliff, tended to show that during the year that had intervened between the location of the South Mountain and the location by Farrell of the Cliff no work of any character whatever was done by the locators of the South Mountain, and that this was also true from the time the Cliff was located to the expiration of the period when a statutory forfeiture would have been occasioned. As all rights of the locators of the South Mountain were, in any aspect, at an end by their failure to adverse, and as the Cliff was prior in time to the Divide, and therefore the burden of proof was on the Divide to establish that the Cliff location was not a valid one, we think that the burden would not have been sustained by the proof offered. To the contrary, we are of opinion that

the proof which was so offered on behalf of the Divide tended, when unexplained, to show that the location of the South Mountain was not made in good faith, and that the claim had actually been abandoned when Farrell made his location. The Supreme Court of Utah should therefore have remanded the cause, so that it might be determined whether or not the South Mountain had been abandoned by the locators of that claim when Farrell made his location; and error was therefore committed in entering judgment in favor of Lockhart, the administrator of Rhodin, decreeing to him possession of the ground in controversy.

The judgment of the Supreme Court of Utah must therefore be reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed and remanded.*