STREET ET AL., APPELLANTS, *v.* DELTA MINING CO., RE-
SPONDENT.

(No. 2,915.)

(Submitted November 22, 1910.   Decided December 22, 1910.)

[112 Pac. 701.]

*Mining Claims—Location—Declaratory Statement—Sufficiency—
Adverse Suits—Abandonment—Forfeiture—Presumptions—
Rights of Senior and Junior Locators—Equity—Findings—
Conclusiveness.*

Equity Cases—Findings—Conclusiveness.
  1.  A finding of the district court in an equity case, against which the evidence does not preponderate, will be deemed conclusive on appeal when attacked on the ground that the evidence is insufficient to justify it.

Mining Claims—Declaratory Statements—Sufficiency.
  2.  Under the rule that a declaratory statement of the location of a lode claim sufficiently identifies the claim if by any reasonable construction, in view of the surrounding circumstances, notice is imparted by it to subsequent locators that the particular portion of the public domain has been located, a statement which referred in its descriptive part to a well-known patented claim (naming it), lying in the direction indicated and at about the distance given in the document, satisfied the requirement of the statute in this respect.

Same—Validity of Location—Presumptions.
  3.  A location of a mining claim once shown to be a valid and sub- sisting one will be presumed to remain so, until the time for doing the annual representation work shall have expired, in the absence of proof of some act or declaration evincing a present intention on the part of the locator to abandon the claim.

Same—Rights of Senior and Junior Locators.
  4.  A location based upon a discovery made within the boundaries of a valid and subsisting claim is void *ab initio*, and the subsequent abandonment or forfeiture of the senior location does not inure to the benefit of the junior one.

*Appeal from District Court, Jefferson County; Lew. L.
Callaway, Judge.*

ACTION by Alexander S. Street and others against the Delta
Mining Company. From a judgment for defendant, plaintiffs
appeal. Affirmed.

For Appellants, there was a brief by *Messrs. Roote & Murray,
Messrs. Breen & Hogevoll, Mr. T. O'Leary,* and *Mr. A. C. Mc-
Daniel.* Oral argument by *Mr. McDaniel.*

The Rolf declaratory statement is fatally defective, for the
reason that it does not state that the vein is cut ten feet below the
surface. (*Dolan* v. *Passmore,* 34 Mont. 277, 85 Pac. 1034.)
The respondent is bound by the description of the discovery work
in the declaratory statement, and can prove no other than that
in the declaratory statement; in other words, respondent is
bound by its record. (Sickles' Mining Law and Decisions, p.
47.)

The Wickes (Heuer location) declaratory statement is invalid,
for the reason that the dimensions of the discovery cut are not
given. (*Hahn* v. *James,* 29 Mont. 1, 73 Pac. 965; *Helena etc. Co.*
v. *Baggaley,* 34 Mont. 464, 87 Pac. 455.)

The Wickes (McCabe and King location) declaratory state-
ment is invalid, for the reason that it is not stated therein that a
well-defined crevice or valuable deposit is disclosed in the dis-
covery cut. The description of the cut is as follows: "Since
and within sixty days from the date of this location, the follow-
ing work has been performed upon said lead, viz.: At the point
of discovery a cut the dimensions of which are ten by four feet
and ten feet in depth is run." Such a cut as here described is
not the equivalent of a shaft, wherein a well-defined crevice or
valuable deposit must be disclosed. (*Terrible M. Co.* v. *Argen-
tine M. Co.,* 89 Fed. 583; *Argentine M. Co.* v. *Terrible M. Co.,*
122 U. S. 478, 7 Sup. Ct. 1356, 30 L. Ed. 1140.) In *Van Zandt*
v. *Argentine M. Co.,* 8 Fed. 725, 728, 2 McCrary, 159, it is said:
"A location rests on what may be found in the discovery shaft;
and if nothing is found there, or if what is found there does not

extend beyond the limits of the shaft, the discovery of a body of ore elsewhere in the claim will not avail.'' (Lindley on Mines, sec. 345; *Beals* v. *Cone,* 27 Colo. 473, 83 Am. St. Rep. 92, 62 Pac. 948; *McMillan* v. *Ferrum M. Co.,* 32 Colo. 38, 105 Am. St. Rep. 64, 74 Pac. 461.)   Since a vein must be disclosed in the discovery cut, it must appear from the record that a vein has been disclosed in the cut, for the•record cannot be supplemented by oral proof of what has been done. (*Dolan* v. *Passmore,* 34 Mont. 277, 85 Pac. 1034.)   While on the subject of this declaratory statement, the insufficiency of the evidence to support it may be pointed out.   Mr. Pennington was the only witness who testified concerning the location of this claim.   His testimony is entirely void of any evidence of discovery work, if any, done on this claim.   The discovery is barely mentioned.   A court cannot presume the performance of statutory requirements which are conditions precedent to the acquiring of title to mineral lands. (*Zeckendorf* v. *Hutchinson,* 1 N. M. 476.)   The declaratory statement is not *prima facie* evidence of due location of respondent's lode. (*Uinta etc. Co.* v. *Creede etc. Co.,* 119 Fed., 164.) And all the necessary steps to make a location must be proved at trial. (*Mutchmor* v. *McCarty,* 149 Cal. 603, 87 Pac. 85; *Bryan* v. *McCaig,* 10 Colo. 309, 15 Pac. 413.)

The next question is whether the abandonment of a prior location will inure to the benefit of a later location on the same ground—supposing for the purpose of this that Heuer's locations of the Wickes and the Rolf were valid locations at the time of the location of the June Bug.   It has been decided by the supreme court of Montana, in *Helena etc. Co.* v. *Baggaley,* 34 Mont. 464, 87 Pac. 455, following *Lavagnino* v. *Uhlig,* 198 U. S. 443, 25 Sup. Ct. 716, 49 L. Ed. 1119, that the abandonment of the prior location inures to the benefit of a later location.   We are aware that the supreme court of the United States in *Farrell* v. *Lockhart,* 210 U. S. 142, 28 Sup. Ct. 681, 52 L. Ed. 994, 16 L. R. A., n. s., 162, has modified the case of *Lavagnino* v. *Uhlig* in respect to abandonment.   The facts in the *Baggaley* and *Lavagnino Cases* are different from the facts in the *Farrell Case* and the case here.   In the former cases the time for the com-

pletion of the first locations had not expired when the second locations were made, and the prior locations were never completed. In the latter cases the first locations had been completed before the second locations were made—all the time assuming, but not admitting, that the Wickes and the Rolf claims were valid. There would seem to be no difference in principle between the abandonment of an incomplete location after second location and the abandonment of a complete location after second location, for both operate equally to devest the first locator of all his rights. And on the authority of the *Baggaley Case* it is submitted that the right, if any, of the locator of the Wickes and Rolf inured to the benefit of the locators of the June Bug. (See, also, Morrison's Mining Rights, 14th ed., 99, where the *Baggaley Case* is cited with approval.)

The testimony of Street is to the effect that Heuer had in November, 1902, expressed his intention to abandon and had abandoned his ground. A mining claim may be abandoned either expressly or impliedly. It may be effected by a plain declaration of an intention to abandon. (*North A. E. Co.* v. *Adams,* 104 Fed. 404, 45 C. C. A. 185.) A mining claim may also be abandoned by the locator giving others permission to enter and locate. (*Conn* v. *Oberto,* 32 Colo. 313, 76 Pac. 369; *Oberto* v. *Smith,* 37 Colo. 21, 86 Pac. 86.) Now, if a locator can give permission to others to enter and locate, and such permission operates as an abandonment of the prior location, why cannot a prior locator, after entry and location by a second locator, ratify the entry and location of the second locator, and by such ratification the rights of the second locator attach as if permission to enter had been given before the second location? In the case of *Oberto* v. *Smith,* 37 Colo. 21, 86 Pac. 86, three-fourths of the prior locators gave Oberto permission to enter and locate. Oberto did enter and locate before the fourth prior locator gave permission. The fourth prior locator, after Oberto's location, ratified the acts of the other prior locators, and the court held Oberto's location good and that the ratification related back to the date of the first permission to locate.

The evidence is insufficient to show that veins are disclosed in the discoveries made by McCabe and King, namely the Wickes, the Covelite, the Mammoth, the Daisy, the Song Bird and the Ruby. The statute requires "a well-defined crevice or valuable deposit." (Laws 1901, p. 140.) A well-defined "crevice" means a mineral-bearing vein. (*Beals* v. *Cone,* 27 Colo. 473, 83 Am. St. Rep. 92, 62 Pac. 948, 958.) "To constitute a vein it is not absolutely necessary that there should be a clean fissure filled with mineral, but it may and does exist when filled in places with other matter. The fissure should, of course, have form, and be well defined with hanging and foot walls." (*Consolidated etc. Co.* v. *Champion M. Co.,* 63 Fed. 540; *Van Zandt* v. *Argentine M. Co.,* 8 Fed. 725, 2 McCrary, 159; *Terrible M. Co.* v. *Argentine M. Co.,* 89 Fed. 583.)

In behalf of Respondent, *Mr. L. P. Forestell* and *Mr. I. A. Cohen* submitted a brief. *Mr. Forestell* argued the cause orally.

It is claimed by appellants that the declaratory statement of the Rolf is fatally defective, for the reason that it does not contain the statement that the vein is cut ten feet below the surface. This question was not raised upon the trial of the case, and is not now before this court. The objection to its introduction was that in referring to the Alta-California (patented) claim, it was too indefinite in its description of natural objects or monuments whereby to identify the claim. The statement also refers to the adjoining claim on the north as the "Wickes" claim. The Wickes location had been previously made, and the declaratory statement filed a month before. Under the circumstances, we respectfully submit that a reference to these claims, they both being of record, and one of them patented, was a sufficient reference to a natural object within the provisions of the statute. (*Tiggeman* v. *Mrzlak,* 40 Mont. 19, 105 Pac. 77.)

It is contended that the declaratory statement as filed should show that the vein was cut ten feet deep. The cut made on the Rolf was an open cut. And under the statute (Pol. Code, 1895, sec. 3611), the cut need not have been ten feet deep, and con-

sequently need not have cut the vein at that depth. All that was required was a cut ten feet in length along the lode from the point of discovery. The declaratory statement recites that the locator dug a cut at the point of discovery of the following dimensions: Fifteen feet long, four feet wide and ten feet deep, wherein is disclosed a well-defined crevice and valuable deposit of ore. Within the rule declared in *Giberson* v. *Tuolumne Copper Min. Co.*, 41 Mont. 396, 109 Pac. 974, the declaratory statement of the Rolf in this respect was sufficient.

It is said that the declaratory statement of the Rolf does not show where the lead was discovered, and does not state that the discovery work was ten feet along the vein. In the case of *Giberson* v. *Tuolumne Copper Min. Co.*, *supra*, with reference to this point, it was held that a substantial compliance with the statute in this regard is all that is required. However, before appellants can complain, they must have then completed a proper location. (*Thornton* v. *Kaufman*, 40 Mont. 282, 135 Am. St. Rep. 618, 106 Pac. 361.)

No better statement of the location of the appellants' alleged discovery of the June Bug is contained in their declaratory statement. So if full rein be given to the argument advanced by appellants, they have hoisted themselves on their own petard, and have no valid location themselves, and therefore will not be heard to complain of respondents. "A subsequent locator is not in a position to complain until he has completed a valid location. A party not interested in the ground in controversy and having no right therein cannot object to the acts of defendants." (*Wilson* v. *Freeman*, 29 Mont. 470, 75 Pac. 84, 68 L. R. A. 833; *Milwaukee Gold Extraction Co.* v. *Gordon*, 37 Mont. 209, 95 Pac. 995; *Thornton* v. *Kaufman*, *supra*.) "The filing of a defective certificate of location of a mining claim or failure to file any certificate does not invalidate the claim, and this is so even where the certificate is void." (*Gibson* v. *Hjul* (Nev.), 108 Pac. 759; *Ford* v. *Campbell*, 29 Nev. 578, 92 Pac. 206, 208, and cases cited.) Both statements being *in pari materia*, and respondent's location being the senior, appellants would have no right as against it. "Location notices must receive a liberal construction to the end

of upholding them when in good faith." (*Bismarck Mountain G. M. Co.* v. *North Sunbeam G. M. Co.,* 14 Idaho, 516, 95 Pac. 14; *Farmington G. M. Co.* v. *Rhymney G. & C. Co.,* 20 Utah, 363, 77 Am. St. Rep. 913, 58 Pac. 832; *Eilers* v. *Boatman,* 111 U. S. 356, 4 Sup. Ct. 432, 28 L. Ed. 454.)

It is said by appellants that the declaratory statement is not *prima facie* evidence of the due location of respondent's lode. "A declaratory statement is *prima facie* evidence of the facts required by law to be stated therein." (Lindley on Mines, sec. 392, and cases cited; *O'Reilly* v. *Campbell,* 116 U. S. 418, 6 Sup. Ct. 421, 29 L. Ed. 669; *Garfield M. & M. Co.* v. *Hammer,* 6 Mont. 53, 8 Pac. 153; *Hammer* v. *Garfield etc. M. Co.,* 130 U. S. 291, 9 Sup. Ct. 548, 32 L. Ed. 964; 27 Cyc. 577 (B).) It should be liberally construed, and substantial compliance with the statute is all that is required. (*Bismarck etc. M. Co.* v. *North Sunbeam G. M. Co., supra.*)

It is said that the next question is whether the abandonment of a prior location will inure to the benefit of a later location on the same ground. That a location, to be good, must be good when made, and that each claimant must stand upon his own location and take only what it will give him under the law, see *Lockhart* v. *Farrell,* 31 Utah, 155, 86 Pac. 1077. The case of *Helena etc. Co.* v. *Baggaley,* 34 Mont. 464, 87 Pac. 455, relied upon by the appellants, simply followed the case of *Lavagnino* v. *Uhlig,* 198 U. S. 443, 25 Sup. Ct. 716, 49 L. Ed. 1119, which case has been modified by the United States supreme court in the case of *Farrell* v. *Lockhart,* 210 U. S. 142, 28 Sup. Ct. 681, 52 L. Ed. 994, 997, as is admitted by the appellants. The case of *Farrell* v. *Lockhart* is also thoroughly exploited by the supreme court of Utah, in which it was originally decided, in the case of *Lockhart* v. *Farrell, supra.*

In *Farrell* v. *Lockhart,* 210 U. S. 142, 28 Sup. Ct. 681, 52 L. Ed. 994, 997, the supreme court said: "We are of the opinion, and so hold, that ground embraced in a mining location may become a part of the public domain so as to be subject to another location before the expiration of the statutory period for performing annual labor, if, at the time when the second location was made,

there had been an actual abandonment of the claim by the first locator." We also refer the court to the case of *Lozar* v. *Neill,* 37 Mont. 287, 96 Pac. 343, in which this court held that in an adverse suit, in order to establish a *prima facie* case, plaintiff must show that the ground was not covered by a prior location, or if so, that such location is invalid or abandoned. "Abandonment must be proved as a fact. It operates *instanter.* In order to be susceptible of proof, the intention must be evidenced by some physical act. Because of this, some courts have held that abandonment consists of an act and intent." (27 Cyc. 597–599.) But abandonment does not operate retroactively. It has no relation back. "If one abandons his location and relocates the ground, such relocation does not relate back, but takes effect from its date." (27 Cyc. 602; *Cheesman* v. *Shreeve,* 47 Fed. 787.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by appellants in aid of an adverse claim filed by them in the United States land office at Helena, against an application for patent by respondent to mining ground situated in Colorado unorganized mining district of Jefferson county. The respondent applied for patent to a contiguous group of six locations, designated as the Wickes, Mammoth, Covelite, Songbird, Ruby, and Daisy lodes. The adverse claim is based on a location designated as the June Bug. The latter was located on June 4, 1902. It is so situated with reference to the respondent's locations that it conflicts with all of them. The original locators of the June Bug were the appellant Street and one Hunt. Subsequently, Street acquired the Hunt interest and thereafter conveyed undivided interests to the other appellants. The Wickes location was made by Charles Heuer on August 4, 1901. On May 22, 1902, he conveyed to J. H. McCabe. On June 12, 1903, McCabe made an amended location for himself and B. T. King. In making the amended location, McCabe and King readjusted the lines so as to make the claim pursue more nearly the course of the vein. On June 16, 1903, McCabe and King located the Mammoth, Covelite, Songbird, Ruby, and Daisy, as

contiguous claims on the east, west, and south, and thereafter conveyed them, with the Wickes, to the respondent.    At the trial, the main contention made by respondent was that the June Bug location was void *ab initio,* because the discovery upon which it was made was within the boundaries of another location, then valid and subsisting, designated as the Rolf.    This latter location was made by Heuer on October 24, 1901.    Most of the area covered by it is now covered by the Covelite, Ruby, and Daisy, and also by the June Bug.    The discovery of the latter was within the exterior boundaries of the Rolf.    No representation work was done upon this claim in 1902, or afterward.    The subjoined plat shows the relative situation of the Wickes, Rolf, and June Bug at the time the location of the last was made.

Upon the evidence adduced, the court found in favor of the respondent. and directed judgment to be entered accordingly. From it, and an order denying a new trial, plaintiffs have appealed. Many questions are argued in the briefs of counsel, but the only ones which it is necessary to decide are, whether the evidence is sufficient to justify the findings as to the validity of the Rolf location, and whether the court erred in its conclusion that the June Bug location was void *ab initio.*

The evidence is somewhat conflicting as to the steps taken by Heuer in the location of the Rolf, and the identification of it by reference to permanent monuments in the recorded declaratory statement is somewhat vague, but the trial court resolved the issue on both of these points in favor of respondent. A careful reading of the evidence leads to the conclusion that the findings should not be disturbed. To say the least, the evidence does not preponderate against them, and, under the rule uniformly observed in this class of cases, they must be deemed conclusive upon this court. (*Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6; *Watkins* v. *Watkins,* 39 Mont. 367, 102 Pac. 860; *Pope* v. *Alexander,* 36 Mont. 82, 92 Pac. 203, 565.)

The reference in the declaratory statement is to the "Alta-California (pat.) * * * distant 1,500 feet in a northerly direction," and to the "Wickes claim" adjoining on the north. The evidence discloses that the Alta-California is a well-known claim, or group of claims, in the direction and at about the distance indicated. The Wickes claim is the one by that name in controversy here, which had been located some two months before. "The rule applicable is that if, by any reasonable construction in view of the surrounding circumstances, the language employed in the description will impart notice to subsequent locators that the particular portion of ground in question has been located, it is sufficient." (*Tiggeman* v. *Mrzlak,* 40 Mont. 19, 105 Pac. 77, and illustrative cases cited.)

The court found specifically that on June 4, 1902, the Rolf was a valid, subsisting location, and that Heuer had not then aban-

doned it nor expressed or evinced any intention to do so. The question whether the June Bug location was void in its inception, because the discovery upon which it was based was within the exterior boundaries of the Rolf, turns upon the proper answer to the inquiry: Did the subsequent abandonment or forfeiture of the latter inure to the benefit of the former? Appellants contend that it did and rely with confidence upon the decision of this court in the case of *Helena Gold & Iron Co.* v. *Baggaley*, 34 Mont. 464, 87 Pac. 455, in which, it is said, this court adopted the rule announced in the case of *Lavagnino* v. *Uhlig*, 198 U. S. 443, 25 Sup. Ct. 716, 49 L. Ed. 1119.

In the *Baggaley Case*, the court was considering the question whether the posting of an initial location notice effected an absolute withdrawal from exploration of the whole area within a circle described by swinging about the point of discovery as a center, the longest distance claimed from the point of discovery, over any part of which the completed location might be laid during the time allowed by the statute for its completion. After quoting, from the opinion in *Lavagnino* v. *Uhlig*, the conclusion of the supreme court, to the effect that the senior locator may abandon or forfeit his rights under his location, and cause them in effect to inure to the benefit of the junior locator, this court said: "If this be the correct view of the law as to the effect of the forfeiture of an older claim which is overlapped by a junior one—and we deem it conclusive—for a much stronger reason must the failure of the claimant to complete his location after posting his preliminary notice inure to the benefit of a junior locator, whose claim is in conflict with such other claim, when the inchoate right acquired by the discovery and the posting of the notice never became fixed by a completion of the location." The conclusion was reached that none of the area surrounding the point of discovery, where the notice is posted, is absolutely withdrawn from exploration, but that discoveries and locations made therein by others pending the completion of the senior location are valid, in so far as they do not conflict with the senior location when completed. It was held that the failure of

the discoverer of the Wisconsin claim (the senior location) to fulfill the conditions subsequent, by a completion of his location, did not cause the area covered by it, which was in conflict with the Success claim (the junior location), to revert to the public domain, but that it inured to the benefit of the latter, the location of which had been perfected.

The rule, as broadly stated in the *Lavagnino Case,* was deemed controlling, even though it abrogated the rule theretofore declared in *Belk* v. *Meagher,* 104 U. S. 279, 26 L. Ed. 735, and subsequent cases, because it is the special prerogative of the supreme court of the United States to construe federal statutes. While not strictly in point, because the controversy in that case grew out of conflicting locations which had been completed and thereafter forfeited, yet in principle the rule was deemed to include cases like the *Baggaley Case,* where the prior locator, after initiating his location, had failed to complete it during the time prescribed by the statute, and the junior locator had completed his location. And this is the correct view; for if the forfeiture or abandonment of a location already completed inures to the benefit of a subsequent location of the same ground, made prior to the forfeiture or abandonment, for a much stronger reason, as we said, should the failure of the prior locator to complete his location inure to the benefit of a junior locator of the same ground, who has actually complied with the requirements of the statute.

Upon further consideration of the situation presented in the *Baggaley Case,* we think the correct result was reached, even though the rule of the *Lavagnino Case* should have been held wrong or inapplicable. To obtain the exclusive right of possession of any portion of the public domain, there must be a location, completed in conformity with the requirements of the federal statutes providing the mode for acquiring title to mineral lands, and also the state statutes supplemental thereto and not inconsistent therewith, by making a discovery, posting the preliminary notice, marking the boundaries, doing the preliminary development work within the prescribed time, and making the

record of a declaratory statement under oath, containing the recitals required to be made therein. It was said in *Belk* v. *Meagher, supra:* "Mining claims are not open to relocation until the rights of a former locator have come to an end. A relocator seeks to avail himself of mineral in the public lands which another has discovered. This he cannot do until the discoverer has, in law, abandoned his claim and left the property open for another to take up. The right of location upon the mineral lands of the United States is a privilege granted by Congress, but it can only be exercised within the limits prescribed by the grant. Locations can only be made where the law allows it to be done. Any attempt to go beyond that will be of no avail. Hence, a relocation on lands actually covered at the time by another valid and subsisting location is void; and this not only against the prior locator, but all the world, because the law allows no such thing to be done. * * * Location does not necessarily follow from possession, but possession from location. A location is not made by taking possession alone, but by working on the ground, recording and doing whatever else is required for that purpose by the Acts of Congress and the local laws and regulations."

The right to make a location is purely statutory. But for the statute, no exclusive right could be acquired; and the extent of the right, both as to the area withdrawn by the location and the character of the title acquired by it, depending, as it does, upon the fulfillment of conditions subsequent, must be measured by the provisions of the statute. If this is so, the posting of the preliminary notice certainly cannot for any length of time establish an exclusive right to a greater area than does the completed location, first, because the statute does not so provide, and second, because a rule which would permit a prospector by posting his notice of intention to locate—which intention he is not bound to carry out—to bar other prospectors from exploring the ground within the area over which the claim may be floated, is manifestly in direct violation of the spirit of the statute. As was pointed out in the case of *Sanders* v. *Noble,*

22 Mont. 110, 55 Pac. 1037, and *Bramlett* v. *Flick*, 23 Mont. 95, 57 Pac. 869, the time allowed under the statute to mark definitely the boundaries of the location, is intended to give the discoverer of a lode, who has posted his notice, time for exploration, so that he may know how to lay his claim. The result is that if he completes his location within the statutory period, it relates to the date of the notice; but it can have no other result. It is true that in swinging his claim he may conflict with junior locators, but this cannot destroy their rights, except so far as the conflict extends. The right acquired by posting the notice is merely a preference privilege of making a location which, when completed, will result in the appropriation of the area covered by it, to the exclusion of any junior location with which it conflicts. This we held in the *Baggaley Case*. But, however this may be, the rule as stated in the *Lavagnino Case* has been entirely discredited by subsequent decisions of the supreme court of the United States, notably in *Brown* v. *Gurney*, 201 U. S. 184, 26 Sup. Ct. 509, 50 L. Ed. 717, and in *Farrell* v. *Lockhart*, 210 U. S. 142, 28 Sup. Ct. 681, 52 L. Ed. 994, 16 L. R. A., n. s., 162, and the rule declared in *Belk* v. *Meagher, supra*, reaffirmed.

In the case of *Brown* v. *Gurney*, the court, without referring to the *Lavagnino Case*, distinctly held that ground covered by a valid location is not restored to the public domain so as to be open to relocation, until abandonment or forfeiture by the original locator, and that a location made prior to that time by another is void. In the case of *Farrell* v. *Lockhart*, the court, in view of the practice which had grown up in the mining states in reliance upon the decision in *Belk* v. *Meagher* and other cases, felt constrained to qualify the rule declared in the *Lavagnino Case*, "so as not to exclude the right of a subsequent locator on an adverse claim to test the lawfulness of a prior location of the same mining ground, upon the contention that at the time such prior location was made, the ground embraced therein was covered by a valid, subsisting mining claim." The court further said: "It is to be observed that this qualification but permits a third locator to offer proof tending to establish the existence of

a valid and subsisting location anterior to that of the location which is being adversed. It does not therefore include the conception that the mere fact that a senior location had been made, and that the statutory period for performing the annual labor had not expired when the second location was made, would conclusively establish that the location was a valid and subsisting location, preventing the initiation of rights in the ground by another claimant, if, at the time of such second location, there had been an actual abandonment of the original senior location. We say this because, taking into view *Belk* v. *Meagher, Lavagnino* v. *Uhlig,* and *Brown* v. *Gurney,* we are of opinion, and so hold, that ground embraced in a mining location may become a part of the public domain, so as to be subject to another location before the expiration of the statutory period for performing annual labor, if, at the time when the second location was made, there had been an actual abandonment of the claim by the first locator.'' Thus qualified the rule does not in any wise conflict with that which has controlled the decisions of all the courts in the mining states since the decision in *Belk* v. *Meagher,* and which has been recognized and applied by the supreme court of the United States in like cases (*Gwillim* v. *Donellan,* 115 U. S. 45, 5 Sup. Ct. 1110, 29 L. Ed. 348; *Clipper Mining Co.* v. *Eli Mining Co.,* 194 U. S. 220, 24 Sup. Ct. 632, 48 L. Ed. 944; *Creede etc. Min. Co.* v. *Tunnel Co.,* 196 U. S. 337, 25 Sup. Ct. 266, 49 L. Ed. 501; *Brown* v. *Gurney, supra*), *viz.,* that a valid location can be made only upon a portion of the public domain then open to location. (*Lozar* v. *Neill,* 37 Mont. 287, 96 Pac. 343; *Nash* v. *McNamara,* 30 Nev. 114, 133 Am. St. Rep. 694, 93 Pac. 405, 16 L. R. A., n. s., 168.)

We understand that it has always been the rule that a location may be abandoned at any time, even though the time for doing the annual work has not expired, and that as soon as the abandonment is complete, it operates as effectively to restore the ground to the public domain as a forfeiture for failure to do the annual representation work. (*Black* v. *Elkhorn Mining Co.,* 163 U. S. 445, 16 Sup. Ct. 1101, 41 L. Ed. 221.) But a location once shown to be a valid and subsisting one will be presumed to remain so,

until the time for doing the annual representation work shall have expired, in the absence, of course, of proof of some act or declaration, or both, evincing a present intention on the part of the locator to abandon.    The distinction between the effect of an abandonment and a forfeiture is pointed out in *McKay* v. *McDougall,* 25 Mont. 258, 87 Am. St. Rep. 395, 64 Pac. 669.    Abandonment takes place when the locator voluntarily leaves his claim to be appropriated by the next comer, without any intention to reclaim it, and becomes effective instantly.    A forfeiture takes place by operation of law, without regard to the intention of the locator, whenever he neglects to preserve his right by complying with the conditions imposed by law, and is made effectual by one who enters upon the ground after the expiration of the time within which the annual labor may be done, and completes a location before resumption of work by the original locator.    In contemplation of law the land is restored to the public domain as soon as the abandonment takes place.    It is never subject to forfeiture, until the expiration of the time within which the annual labor may be done.

The court found that at the time the location of the June Bug was made, the Rolf was a valid, subsisting claim; and since the discovery of the June Bug was within the limits of the ground already appropriated under the Rolf location, the conclusion by the district court that the June Bug location was void *ab initio* was clearly correct.    The result is that the judgment and order of the district court must be affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.