# FRANCIS v. JENKINS.
## No. A–930.

District Court of Alaska.   Third Division.   Valdez.
April 12, 1937.

Arthur G. Thompson, of Anchorage, for plaintiff.
Warren N. Cuddy, of Anchorage, for defendant.

HELLENTHAL, District Judge.

The plaintiff, R. A. Francis, brought this action to quiet title to certain mining claims situate in the Talkeetna Recording Precinct, Alaska, under sec. 4001, C.L.A.1933, and for damages for gold mined and taken from said claims by the defendant, F. W. Jenkins.

It is alleged in the complaint that the plaintiff is the owner of and entitled to the possession of certain mining claims which the evidence shows were located by the persons and on dates as follows: Wolverine Fraction, located by the plaintiff and Clarence Sullens, April 14, 1933; Wolverine Pup, located by the plaintiff, May 4, 1934; and the Hungry Dog, located by the plaintiff, May 5, 1934.

The plaintiff alleges that the defendant claims an adverse interest or estate in said claims; that said claim of the defendant is without right and void; that the defendant during the mining seasons of 1934 and 1935 unlawfully entered upon said claims and removed gold therefrom of the reasonable value of five thousand dollars ($5,000); that the

defendant will continue to trespass upon said claims unless restrained by the court and prays that the defendant be required to set forth his claim; that plaintiff's title be adjudged valid and the defendant's void; that the defendant be enjoined from trespassing on said claims; judgment for five thousand dollars ($5,000) damages, attorney's fees, costs and such other equitable relief as plaintiff may be entitled to.

Defendant contended that the plaintiff by his pleadings required the defendant to set up only such right as the defendant claims in the claims referred to in the complaint and that he was not required to set up any right or claim to or in the ground covered by said claims, which the defendant claims by virtue of other locations.

The Court for the purpose of this case has determined that the complaint should be read as though the complaint averred that the defendant claims an adverse interest or estate in the ground covered by or included in the plaintiff's claims.

The answer is a general denial of all the allegations of the complaint and a special denial of having any interest in common with the plaintiff in the claims set forth in the complaint and a disclaimer of such interest and four affirmative defenses.

In the first affirmative defense, the defendant alleges that he is the owner of a placer mining claim known as No. 1 Above Discovery on Willow Creek, located May 12, 1906, by W. J. Hunter and a placer mining claim known as Discovery on Ruby, located May 14, 1906, by William Brisbin; alleges the making of discoveries on said claims, the staking thereof and the recording of the notices of locations, as well as doing of the assessment work from the time of location until he purchased the same in 1929 and the doing of the assessment work since 1929 to date, and that he has been in the actual, open and notorious possession of said claims since 1929 and sets forth his chain of title in detail from the locators to himself.

The second affirmative defense contains the same allegations as the first affirmative defense but does not give the chain of title in detail and further avers that his predecessors in interest located a water right on Discovery on Ruby, built dams and ditches in connection with said water right and that his predecessors and himself have used said water, dams and ditches for many years last past, and that he is and was at the time the complaint was filed in possession thereof.

The third affirmative defense contains the same allegations as to ownership and avers that the title to No. 1. Above Discovery on Willow was adjudged to belong to the defendant in cause No. S–352 in this court on the 4th day of May, 1935, in an action between the parties herein.

The fourth and last affirmative defense contains the same allegations as to ownership and possession and defendant further pleads a failure of the plaintiff to do assessment work on the claims referred to and described in the complaint and a forfeiture of the plaintiff's claims for said failure; and prays that plaintiff's complaint be dismissed and that he be allowed a reasonable attorney's fees and costs.

The reply consists of special denials of all the material allegations contained in the defendant's four affirmative defenses.

On January 5th, 1937, this cause came on regularly for trial before the Court, at which time the plaintiff was represented by W. N. Cuddy, Esquire, and the defendant by A. G. Thompson, Esquire. The plaintiff offered evidence to the effect that defendant made locations of No. 1 Above Discovery on Willow and of Discovery on Ruby on July 1, 1934, and certified copies of the certificates of location of said claims were introduced by the plaintiff and offered evidence of a location made by the plaintiff and one Clarence Sullens of the Wolverine placer on April 14, 1933, and that said claim was duly and regularly staked, a discovery made thereon and the location certificate which describes the claim

as lying between the Sure Thing Group and No. 1 on Ruby Gulch, duly recorded, and that the plaintiff had become the owner of the locator Sullen's interest; that the Hungry Dog placer claim was duly and regularly located by the plaintiff on May 5, 1934, and location certificate duly recorded; and that the Wolverine Pup was duly and regularly located by the plaintiff on May 4, 1934, and location certificate duly recorded and that the assessment work for such claims was done on the Sure Thing No. 1, a claim that is contiguous to the Wolverine placer for each of the years since the Wolverine placer, Wolverine Pup and Hungry Dog were located; that said assessment work consisted of mining, building of dams in connection with sluicing and the building of dams for the purpose of keeping the debris from going down stream on Discovery No. 1 on Ruby and to keep the debris from filling the defendant's dam on Ruby Creek. Whereupon the plaintiff rested.

The defendant thereupon offered the location notices of No. 1 Above Discovery on Willow and Discovery on Ruby, made by his predecessors in 1906 and recorded in the office of the Recorder for the Talkeetna Recording Precinct and offered in evidence conveyances from the original locators to various parties, ultimately establishing all right to and interest in said claims in the defendant. Defendant testified that the stakes marking said claims were in place in the early twenties of this century when they were shown to him by the then owners of said claims, that he took possession of said claims in the year 1929 and that at that time the boundaries of said claims could be easily traced by following the stakes on the ground, some of which stakes had become old which were at the time replaced by him; that the purpose of making locations of said claims in 1934 was to make a new record of said claims for the reason that he believed the original location notices filed with the Precinct Recorder at Talkeetna had been destroyed, but that before he completed said locations and the filing of the location certificates, he discovered that the original location notices

were still of record and that therefore he did not do anything further with the locations made on July 1, 1934; that every year since 1929, one hundred dollars ($100) worth of assessment work was done on, and for the benefit of, each of the said claims, No. 1 Above Discovery on Willow and Discovery on Ruby; that during the year 1932 Clarence Sullens mined Discovery on Ruby and did the assessment work on said claim for said year ending July 1, 1932, that the said Clarence Sullens who performed said work was the same Clarence Sullens who was one of the locators of the Wolverine on April 14, 1933, a claim now claimed by the plaintiff; that said work and assessment work was done by Sullens under and pursuant to an oral agreement made by the defendant with said Clarence Sullens. No evidence was offered as to the actual staking of the No. 1 Above Discovery on Willow or Discovery on Ruby, nor was evidence offered showing that the assessment work had been done on said claims prior to 1929. Evidence, however, was offered that said claims had been mined and were in the possession of the defendant's grantors at various times between 1906 and 1929. The defendant also offered a decree of this court adjudging him to be the owner and entitled to the possession of No. 1 Above Discovery on Willow, in a suit between the parties herein.

The evidence in this case shows that defendant's claim, Discovery on Ruby, is covered in part by the plaintiff's claims, Wolverine Pup and the Wolverine, and it is not clear from the evidence whether there is any ground between the defendant's claim, Discovery on Ruby, and the plaintiff's claim, Sure Thing No. 1. If there is such ground it is covered by the Wolverine. Defendant's No. 1 Above Discovery on Willow is covered by the plaintiff's Hungry Dog, which is overlapped in part by plaintiff's Wolverine Pup. The evidence does not show that the plaintiff's Hungry Dog or Wolverine Pup cover any ground that is not covered by the defendant's No. 1 Above Discovery on Willow and Discovery on Ruby.

It is contended by the defendant that the plaintiff cannot maintain this action for the reason that he was not in possession of the claims set forth in the complaint at the time this suit was brought and that he has not been in possession of said claims since that date.

■■ The Court is of the opinion that if the ground covered by the plaintiff's claims was unappropriated public domain at the time of the making of his locations, then the location of said claims and the doing of the assessment work thereon, if such work was done, would be sufficient possession for the plaintiff to maintain this action. If, however, the ground covered by the plaintiff's claims was appropriated ground, segregated from the public domain, by prior valid and subsisting locations, then the said locations would be void as far as they conflicted with the defendant's claims and would not give the plaintiff sufficient possession to maintain this action, under sec. 4001, C.L.A. 1933. It is therefore incumbent upon the Court to determine the validity of the defendant's locations, No. 1 Above Discovery on Willow, and Discovery on Ruby. As to No. 1 Above Discovery on Willow, the court is of the opinion that the ownership of said claim was determined in a prior action between the parties, in which the defendant was adjudged to be the owner of said claim, and that said claim was a valid and subsisting claim at the time the plaintiff located or attempted to locate the Hungry Dog on May 5, 1934, and that therefore the Hungry Dog never was a valid location, Belk v. Meagher, 104 U.S. 279, 26 L.Ed. 735; Farrell v. Lockhart, 210 U.S. 142, 28 S.Ct. 681, 52 L.Ed. 994, 16 L.R.A.,N.S., 162; Swanson v. Sears, 224 U.S. 180, 32 S.Ct. 455, 56 L.Ed. 721, and therefore plaintiff did not have even constructive possession of the same when he brought this action to quiet title to said claim or to that part of the Wolverine Pup located May 4, 1934, which overlaps the Hungry Dog claim and conflicts with No. 1 Above Discovery on Willow Creek.

■■■

It is contended by the plaintiff that the ground claimed, by the defendant by his Discovery on Ruby was unappropriated public domain at the time the plaintiff made the Wolverine and Wolverine Pup locations. The evidence shows that the assessment work on defendant's Discovery on Ruby was done for each and every year since 1929, that it was done for the assessment year ending July 1, 1932, the year preceding the location of the Wolverine, and for the assessment year ending July 1, 1933, the year before the Wolverine Pup was located. It is, however, contended that the act of March 2nd, 1907, known as the Waskey Act, required the assessment work to be done for each and every assessment year during the time that the claim is held, that is, from the time said act was enacted in 1907, until the repeal of said act, which occurred after the instigation of this case and that failure to do said assessment work for any one year (ipso facto) results in forfeiture. The defendant, however, contends that since defendant's claim was located before 1907, it does not apply to his claim, for the reason that a property right had vested which could not be divested and that the act excepts claims located prior to its enactment.

The Court is of the opinion that it is not necessary to determine the effect of the Waskey Act, in this case, because a forfeiture is neither pleaded nor proved. It might be contended that since the law provides for forfeiture in case the assessment work is not done, it is not necessary to plead a forfeiture, because it results as a matter of law from the failure to do assessment work and since the doing of the assessment work has been denied by the plaintiff the pleading is sufficient.

■ Be this as it may—there is no proof that the assessment work was not done for any year prior to 1929, and hence no proof of forfeiture. It is a well-settled rule of law that failure to do assessment work and a forfeiture must be alleged in the pleadings and that the burden

of proving it rests upon the person who seeks to take advantage of it.

In Hammer v. Garfield Mining Co., 130 U.S. 291, 301, 9 S.Ct. 548, 552, 32 L.Ed. 964, the courts say: "As to the alleged forfeiture set up by defendant, it is sufficient to say that the burden of proving it rested upon him; that the only pretense of a forfeiture was that sufficient work, as required by law, each year, was not done on the claim in 1882; and that the evidence adduced by him on that point was very meagre and unsatisfactory, and was completely overborne by the evidence of the plaintiff. Belk v. Meagher, 104 U.S. 279, [26 L.Ed. 735]. A forfeiture cannot be established except upon clear and convincing proof of the failure of the former owner to have work performed or improvements made to the amount required by law."

Lindley on Mines, vol. 2, p. 1600, sec. 643: "Where, however, either abandonment or forfeiture are relied upon, the burden of proof rests with the party asserting it." (and authorities cited)

Volume 2, p. 1606, sec. 645: "We have heretofore observed the reluctance with which the courts enforce this penalty. They have settled the doctrine that the forfeiture cannot be established except upon clear and convincing proof of the failure of the former owner to have work performed or improvements made to the amount required by law."

Volume 2, p. 1628, sec. 646: "Necessarily, in cases where the forfeiture proceedings are invoked, the burden of proof rests upon the party claiming the benefit of such forfeiture."

It is next contended that the defendant's claim, Discovery on Ruby, is void because the location notice of said claim does not comply with the statute in that it does not tie said claim to a natural object or permanent monument. The location notice, according to defendant's Exhibit "B", a certified copy, introduced in evidence is as follows:

100

"Location Notice

"Notice is hereby given, that the undersigned, a citizen of the U. S. has located the following described 20 acres of placer mining ground.

· "Commencing at this notice and running in a Northerly direction 1,320 ft. to center stake, and 330 ft. in a Northeasterly direction to stake No. ———, and 1,320 ft. in a Southeasterly direction to stake No. 2; thence 660 ft. to stake No. 3, and 1,320 ft. in a Northerly direction to stake No. 4.

· "This claim shall be known as the Discovery on Ruby Creek, tributary of Willow.

"Located May 14, 1906, in Cook Inlet Mining District of Alaska.

"Located by

"Witnesses:                    "Wm. Brisbin
    "Sam Barton
    "Geo. Nass
"Filed 9 A.M. July 28, 1906     "J. Goodell,—Dist.
                                    Recorder."

Lindley on Mines, volume 2, p. 902, sec. 381:

"The certificate is not required to show the precise boundaries of the claim as marked on the ground, but it is sufficient if it contains directions, which, taken in connection with such boundaries, will enable a person of reasonable intelligence to find the claim and trace the lines.

"The object of any notice at all being to guide the subsequent locator and afford him information as to the extent of the claim of the prior locator, whatever does this fairly and reasonably should be held to be a good notice. (Authorities cited.) Great injustice would follow if, years after a miner had located a claim and taken possession, and worked upon it in good faith, his notice of location were to be subject to any very nice criticism."

Volume 2, p. 910, sec. 384: "Where it is shown that a subsequent locator had actual notice of the location, and the boundaries, neither he nor his grantee should be permitted to take advantage of some technical defect in the notice."

Volume 2, p. 912, sec. 389: "As heretofore frequently indicated, in the absence of a state law or local rule requiring it, there is no necessity for recording any notice or certificate in connection with the acquisition of title to public mineral lands by location."

Volume 2, p. 892, sec. 379: "The congressional laws do not in terms require any such certificate, * * * It is only when such notice, or its equivalent, is required to be recorded that the provisions of the federal law become mandatory."

Talmadge v. St. John, Morrison Mining Report, vol. 21, p. 18:

" 'The object of any notice at all being to guide a subsequent locator and afford him information as to the extent of the claim of the prior locator, whatever does this fairly and reasonably should be held a good notice. Great injustice would follow, if years after a miner had located a claim, and taken possession and worked upon it in good faith, his notice of location were to be subjected to any very nice criticism.' * * * 'The natural objects or permanent objects here referred to are not required to be on the ground located, although they may be, and the natural object may consist of any fixed natural object and such permanent monument may consist of a permanent post or stake firmly planted in the ground, or in a shaft sunk in the ground.' The stone monuments referred to in this notice were certainly within the interpretation of the statute thus given, and universally followed.

"Moreover, when the plaintiffs went upon this mining ground they were confronted with ample evidence touching its occupancy and prior location. The tent, bedding, and tools of the defendants were there. Jennings, an employee, was holding possession for them. The monuments erected

by defendants could have been seen, and should have been seen, and in fact were seen. As was said by this court, under a similar state of facts, in Newbill v. Whitfield, 63 Cal. 81: 'At all events, when the defendants went on the ground on the 16th and 17th days of July, 1881, they found, or could have found if they had looked, the monuments,—eight in number—erected by Wallace, Parks, and Ferrell on the 12th of April, with the notices above indicated. Those boundaries included the premises in controversy. From them the defendants saw, or ought to have seen, that the ground was appropriated by others, and was not open to location by them.' "

In the case under consideration, the first claim located, by the plaintiff and Sullens and now claimed by the plaintiff, was the Wolverine. The evidence shows that the same Clarence Sullens performed the assessment work on Discovery on Ruby the year before the Wolverine was located by him and the Wolverine is described as lying between Discovery or No. 1 on Ruby and the Sure Thing Group. This conclusively shows that at the time the Wolverine was located the locators had knowledge of the Discovery on Ruby and could by the exercise of reasonable diligence have traced the claim upon the ground.

In the case of Hammer v. Garfield Mining Co., 130 U.S. p. 298, 9 S.Ct. page 551, 32 L.Ed. 964, the courts say: "Section 2324 of the Revised Statutes, which went into effect on the 1st of December, 1873, provides that records of mining claims subsequently made 'shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located, by reference to some natural object or permanent monument, as will identify the claim.' These provisions, as appears on their face, are designed to secure a definite description,—one so plain that the claim can be readily ascertained. A reference to some natural object or permanent monument is named for that purpose. Of course, the section means when such reference can be made. Mining lode claims are frequently

found where there are no permanent monuments or natural objects other than rocks or neighboring hills. Stakes driven into the ground are, in such cases, the most certain means of identification. Such stakes were placed here, with a description of the premises by metes, and, to comply with the requirements of the statute as far as possible, the location of the lode is also indicated by stating its distance south of 'Vaughan's Little Jennie Mine,' probably the best known and most easily defined object in the vicinity. We agree with the court below that the Little Jennie mine will be presumed to be a well-known natural object or permanent monument, until the contrary appears, where a location is described as in this notice, and is further described 'as being 1,500 feet south from a well-known quartz location, and there is nothing in the evidence to contradict such a description, distance, and direction.'"

██ Under the foregoing authorities, the Court is of the opinion that the notice in the case sufficiently described the claim under the statute. If, however, there is any doubt as to the sufficiency of this notice, it would not have the effect of working a forfeiture of the defendant's claim.

Harris v. Equator Mining Co., 12 Morrison Mining Reports, 180: "Conceding that proposition, it does not follow that a locator in actual occupancy, who has been evicted by a wrong-doer, must give evidence of every fact necessary to a valid location in an action to recover possession. Not on the ground that the essentials of a valid location are in any case to be omitted, but that, in support of undisturbed possession, long enjoyed, a presumption may, in some cases arise that the location was at first well made. The Statute of Limitation, enacted by the State, and recognized in the act of Congress, is founded on this principle. If, in this State, the practice in ejectment for mining claims has been to show all the steps of a valid location in cases of actual occupancy and possession in the plaintiffs, it has never been declared that such proof is in all such cases indispensable. It is not necessary, however, to discuss the point at length, for it is

clear that a purchaser may be in a different position from the locator of the claim, not as against the general government, with which nothing can avail but strict compliance with the law regulating location, but as against other citizens seeking to locate the same ground; it may well be said that a purchaser in possession under a conveyance regular in form is in by color of title, which in time, under the Statute of Limitation, will ripen into a perfect right. And it seems reasonable to allow him to maintain his possession and his right against one who seeks only to initiate a new claim to the same thing. In doing so, the regulations respecting locations are not at all relaxed, nor is any condition on which the estate is held set aside. A presumption is indulged that the location was regularly made in the first place, and the party in possession is allowed to remain so long as he shall comply with the conditions on which he holds the estate. The circumstance that a miner's estate in the public lands is subject to conditions, on failure of which it will be defeated, is not controlling. In general, we apply to mines in the public lands the rules applicable to real property, as that it may be conveyed by deed, is subject to sale on execution as land, descends to the heir of the claimant and not the personal representative of his estate, and so on. No reason is perceived for denying the force and effect of the rule under consideration as applicable to such property. * * * "

In Sturtevant v. Vogel, 167 F. 448, 451, 3 Alaska Fed. 249, the Circuit Court for the Ninth Circuit had before it an Alaskan case which arose in Nome. The Court considered the matter of the sufficiency of a location notice and the effect of filing a notice that did not comply with the statute; the courts say:

"This statute permits the recording of instruments. * * * " (Referring to the Alaska Statute in force at the time the claim under consideration was located.)

"It contains no positive enactment that any of the enumerated instruments shall be recorded, nor does it provide

that the failure to record any instrument shall work a forfeiture of rights thereunder. Obviously by the terms of this statute an unrecorded deed is not rendered invalid as between the parties, nor does the mere failure to record a mining location work a forfeiture thereof. We are therefore not called upon to decide the question, discussed by counsel, whether a statutory requirement that the location notice be recorded is mandatory or merely directory."

We, therefore, conclude that at the time the Wolverine was located, April 14, 1933, and at the time the Wolverine Pup was located, May 4, 1934, the Discovery on Ruby was a valid and subsisting location; that the locations of the plaintiff, the Wolverine and Wolverine Pup were not made on unappropriated public domain, and that therefore the plaintiff has no right of possession under said locations, as far as they conflict with defendant's claim Discovery on Ruby, and therefore cannot maintain this action; that the plaintiff's complaint should be dismissed; that two hundred dollars ($200) is a reasonable attorney's fee to be allowed the defendant as costs for defending this action and that in addition thereto the defendant should be allowed his costs herein incurred.

The defendant may prepare and present findings of fact, conclusions of law, in accordance with this opinion, and a decree.