[No. 14752.   Department One. — August 25, 1892.]

# A. W. STINCHFIELD, APPELLANT, *v.* JAMES N. GILLIS ET AL., RESPONDENTS.

96   33
s107  86

MINING CLAIMS — INTERSECTING VEINS — PRIORITY OF TITLE. — The ownership of mineral contained within the space of intersection of two veins which cross each other is determined by priority of title to the respective veins.

ID. — BARGAIN AND SALE DEED — DESIGNATION OF BOUNDARIES — ESTOPPEL OF GRANTOR — VALIDITY OF LOCATION — EFFECT OF DEED. — Where the claimant of a mine in possession makes a bargain and sale deed thereof, particularly designating its surface boundaries, he is estopped, as against the grantee, from denying a valid location by himself or his grantor, as the basis of the title conveyed; and the grantee, as against the grantor, becomes vested with title to the mining claim, as fully as if it were patented, including every vein and every part of every vein throughout its entire depth, which has its apex within the surface boundaries designated in the deed, subject to the provisions of the Revised Statutes of the United States.

ID. — LOCATIONS SUBSEQUENT TO DEED — PRIORITY OF TITLE — RIGHT TO INTERSECTING VEIN. — The grantor of such mining claim can acquire no right as against his grantee by virtue of any subsequent location to defeat or limit his grantee's estate, or any right appurtenant thereto, and the fact that such subsequent location was made upon a vein not transferred to the grantee, but which intersects with a vein having its apex within the surface boundaries of the granted vein, and was made prior to a relocation by the grantee of the granted vein, is immaterial, as respects priority of title to the mineral at the point of intersection, the grantee having such priority, as against the grantor, by virtue of the deed of bargain and sale, which necessarily implies a valid prior location to the extent of the boundaries granted.

ID. — SMALL VEINS INTERSECTING LARGER. — The size of the intersecting
XCVI. CAL.—3

veins is immaterial upon the question of the legal rights attached to ownership, and a single small vein which intersects a larger one is · weighed and measured by the same law, and entitled to the same consideration before the court, as the mother lode.

ID. — AGREED BOUNDARY LINE — ERECTION OF BULKHEAD — AGREEMENT NOT RETROACTIVE UPON PRIOR TITLE. — The erection of a barricade or bulkhead by the parties as an agreed boundary between the works of their respective mines, subsequent to the working out of the mineral at the place of intersection of veins cropping upon the surface of their respective claims, is immaterial, upon the question of the right to such mineral by priority of title, as such title existed before the erection of the bulkhead.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial.

The main facts are stated in the opinion of the court. The bulkhead spoken of in the last clause of the opinion was erected in the works as an agreed boundary after the defendant Rice had excavated the vein at the point of intersection, and after the drifts in the two mines had come together.

*I. M. Kalloch, F. P. Otis,* and *Wheaton, Kalloch & Kierce,* for Appellant.

*F. W. Street,* for Respondents.

GAROUTTE, J. — This action was brought to recover the value of certain gold alleged to have been taken by respondents from the mining claim of appellant. The facts, *briefly stated, are as follows:* For many years prior to January 17, 1886, respondent Gillis was in the peaceable possession of, and claiming to be the owner of, a certain mining claim known as the Carrington claim. Upon said date he sold and transferred to appellant, by bargain and sale deed, a portion of the Carrington claim designated as the Pine Tree mine. At the date of this transfer the co-respondent Rice was working upon a portion of the Carrington claim not included in the transfer to Stinchfield, known as the Rice vein, giving Gillis a certain percentage of all gold taken out for the

use of the mine. The apices of a vein called the West vein and of the Pine Tree vein were within the surface limits of the Pine Tree mine, and the apex of the Rice vein was in that portion of the mine not transferred to Stinchfield by Gillis. Immediately after the transfer to Stinchfield, Gillis located or relocated that portion of the mine not transferred, and within a few days thereafter, Stinchfield located that portion of the mine transferred to him. The Rice vein and the West vein, in their descent into the earth, intersect within the surface ground purchased by Stinchfield, and at the point of intersection of these veins valuable deposits of gold were found. Rice, in following his vein into the earth, came to the point of intersection, and thereupon found the deposits of gold, which he removed as his property; a few days subsequent, Stinchfield, following the west vein into the earth, arrived at the same spot, but too late; indications pointed unmistakably to what had been, but the gold was gone. Appellant claimed the gold to be his property, and brought this action to recover ten thousand dollars, the same being the value thereof. Judgment went against him, and this appeal is before us, attacking the judgment and the order denying the motion for a new trial.

As between the owners of separate and intersecting veins, the ownership of the mineral contained within the space of intersection is determined according to the provisions of section 2336 of the Revised Statutes of the United States, which reads as follows: "Where two or more veins intersect or cross each other, priority of title shall govern, and such prior location shall be entitled to all ore or mineral contained within the space of intersection; but the subsequent location shall have the right of way through the space of intersection for the purpose of the convenient working of the mine; and where two or more veins unite, the oldest or prior location shall take the vein below the point of union, including all the space of intersection."

From an examination of the record, it is apparent that

the judgment for respondents was based upon the law quoted, taken in connection with the finding that neither Gillis nor his grantor Carrington ever located the Carrington claim, and the further fact that the location of Gillis, made after his deed to Stinchfield, was prior in point of time as compared to the location of Stinchfield. This is necessarily the fact, for the court finds in express terms that the gold was taken from the point of intersection of the veins to which reference has already been made, and that such point of intersection was upon the Pine Tree mine. Under such conditions the title to the gold would be determined by priority of title to the respective mines, and it is from this standpoint that the court decided the case. As between the plaintiff and Gillis, the locations of their respective mines, made subsequent to the deed of Gillis, are not material to any matter involved in this litigation. By bargain and sale deed Gillis conveyed the Pine Tree mine to plaintiff, particularly designating its surface boundaries. These parties occupied the relative positions of grantor and grantee, under a bargain and sale deed, with all the rights and obligations peculiar to that relation, and it is elementary that Gillis, by a subsequent location or otherwise, could not obtain any title which he could assert against his grantee, and thereby defeat or limit his grantee's estate, or destroy or limit any easement or right appurtenant thereto, and necessary to the enjoyment of a perfect title. By his deed, respondent Gillis was estopped from denying his own title in fee at the date of that conveyance, and therefore necessarily estopped from denying a valid location by himself or his grantor as the basis of such title. If he had title to the mining claim at the date of the deed, he could only have had such title by virtue of a prior location, for title in fee necessarily implies a prior valid location. It was said in *Belcher Con. G. M. Co.* v. *Deferrari,* 62 Cal. 163: " As we take notice of the character of the property and its original ownership in the United States, the defendants were estopped from denying that they and their co-grantors (or

those from whom they derived) had located the mines in accordance with the laws of the United States, — the only way in which the title could be acquired." It follows that no right whatever accrued to the grantor Gillis as against his grantee, the plaintiff, by virtue of his subsequent location, and that the location of the Pine Tree mine, as against the grantor Gillis, must have occurred at some time prior to his deed to Stinchfield. In *Champion Mining Co.* v. *Gold Mining Co.*, 75 Cal. 78, it was held that defendant's location must be considered as having been made at least from the date of its patent, and here it must be considered that the location of plaintiff's mine must have been made at least as early as the date of his deed.

The deed of Gillis passed to the plaintiff the Pine Tree mine to the same extent and to the same effect that a patent from the United States would have passed it; that is, as against the grantor, he was vested with the title to this mining claim, including every vein and every part of every vein throughout its depth which had its apex within the surface boundaries of the claim, subject to the provisions of the Revised Statutes of the United States heretofore quoted.

It is insisted that the West vein is not a vien, but a crossing. The court finds this "crossing" to be a "single small vein dipping to the west, and having its apex in the Pine Tree mine." If this crossing, as it is termed, is a vein, and the court has so found it to be, its size is immaterial when considered with reference to the legal rights attached to the ownership. A "single small vein" is weighed and measured by the same law, and entitled to the same consideration before the court, as the mother lode, and very often is far more valuable in the eyes of its owner. In the case of *Jupiter Mining Co.* v. *Bodie Con. Mining Co.*, 11 Fed. Rep. 675, Circuit Judge Sawyer, said: "A vein or lode authorized to be located is a seam or fissure in the earth's crust filled with quartz, or with some other kind of rock in place, carrying gold, silver, or other valuable mineral deposits named in the statute.

It is not enough to discover detached pieces of quartz or mere bunches of quartz not in place. The vein, however, may be thin, and it may be many feet thick or thin in places, — almost or quite pinched out, in miner's phrase, — and in other places widening out into extensive bodies of ore. So, also, in places it may be quite or nearly barren, and at other places immensely rich. It is only necessary to discover a genuine mineral vein or lode, whether small or large, rich or poor, at the point of discovery within the lines of the claim located, to entitle the miner to make a valid location, including the vein or lode."

By reason of the views of the court hereinbefore expressed, the finding that neither Gillis nor his grantor made a location of the Carrington claim prior to the deed to Stinchfield is immaterial, and if material, the evidence disclosed by the record is too weak to support it. The facts as to the erection of a barricade or bulkhead by the parties between the works of the respective mines are immaterial to the questions here involved, conceding them to be as claimed by respondent. (*Stockton* v. *Garfrias*, 12 Cal. 315.)

Let the judgment and order be reversed, and the cause remanded for a new trial.

HARRISON, J., and PATERSON, J., concurred.

Hearing in Bank denied.