[L. A. No. 653.   Department One.—July 30, 1900.]

## J. C. McCANN et al., Respondents, v. J. C. McMILLAN et al., Appellants.

Mining Claims—Validity of Relocations—Evasion of Annual Work.
A relocation made by mining claimants at the close of the year in the name of a nonresident, without his authority, under a pretense that they had abandoned their claims immediately prior to such relocation, with full knowledge that no annual work had been done or attempted, as required by the statute, and with intent to evade such requirement, and to preclude a subsequent valid location, has no validity or effect; and a location proper in form, made on the first day of the following year by another claimant, for failure of the former claimants to do the required annual work, is valid and effective.

Id.—Abandonment of Claims — Question of Intention — Facts and Circumstances—Inconclusive Testimony—Support of Finding.— Abandonment of mining claims is a question of intention, which it is the province of the jury or the trial court to determine, in view of all the facts and circumstances of the case. The direct testimony of claimants that they abandoned the claims in controversy a few minutes before they relocated them in the name of another person is not conclusive; and a finding that they did not abandon them is supported, notwithstanding such testimony, where the facts and circumstances in evidence indicate its improbability, and justify the conclusion that there was no abandonment.

Id.—Location of Borax Claims—Lode Claims—Placer Claims.—It is not material that locations of mineral claims containing deposits of borate material, or borax, should be described either as lode claims, or as placer claims; and notices stating "that we, the undersigned, have this day located this ground for borate mining purposes," and describing claims fifteen hundred feet long and six hundred feet wide, are sufficient as notices of placer claims.

Id.—Reference to Monuments in Notice—Liberal Construction.— Notices of location of mining claims are to be liberally construed; and references in a notice to an adjoining mine, and to the distance and direction of the claim from a named road and town, are presumed to be a sufficient reference to monuments to identify the claim.

Id.—Marking of Boundaries — Record of Claim.—Though the distinct marking of the boundaries of a mining claim upon the ground so that they can be readily traced is essential to a valid location, yet the statute does not require that the record of the claim shall state that it is so marked upon the ground.

Id.—District Record Book—Custody of County Clerk.—Where the pleadings admit that the claims were located in a specified mining district, and the name of the recorder of that district is shown, a district record book showing records of locations in the district signed by such recorder, and produced by the county clerk, in pursuance of the act of 1897, then in force, comes from the proper custodian.

Id.—Custom to Record — Supply of Evidence by Defendant.—Evidence introduced from the district record book of the claims both of the plaintiffs and of the defendants is some evidence that there was a rule or custom to record mining claims in the district; and the absence of the proof of such custom by the plaintiff, objected to by the defendants, is supplied by the defendants' introduction of the same records to prove their locations.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. Frank F. Oster, Judge.

The facts are stated in the opinion of the court.

Reddy, Campbell & Metson, for Appellants.

L. M. Sprecker, and Rolfe & Rolfe, for Respondents.

THE COURT.—Plaintiffs brought this action to quiet their title to three mining claims known as the Compromise, Handy, and Sixteen to One, situate in Calico mining district, San Bernardino county. Findings and judgment were for the plaintiffs, and defendant Barkley appeals from the judgment and from an order denying his motion for a new trial. Defendant McMillan answered, disclaiming all interest in the property involved.

A general outline of some material facts is essential to a comprehension of the points in controversy.

Prior to January 1, 1896, H. B. Stevens and Eugenia D. Porter located certain mining claims covering the same ground now claimed by plaintiffs under locations made by themselves on January 1, 1897, the validity of which is the ultimate question here involved. No assessment work was performed by the prior locators during the year 1896 on any of the claims. On December 28, 1896, said Stevens and Porter sold and conveyed their said claims to the defendant McMillan. On December 30, 1896,

McMillan and one C. E. Calm went upon said claims, and, as claimed by defendants, abandoned them, and afterward, upon the same day and the next, relocated them for and in the name of defendant Barkley. Plaintiffs made their alleged locations on the morning of January 1, 1897, assuming that the ground was then open to location.

Plaintiffs' title is controverted by appellant on each of two principal grounds, which will be noticed in their order.

1. That the ground in controversy was not open to location by the plaintiffs, because of the locations made for defendant Barkley on December 30, 1896.

That the locations made prior to 1896, and which were conveyed by Stevens and Porter to McMillan on December 28, 1896, were at that time valid locations is not questioned; and, but for the alleged abandonment of them by McMillan on December 30th, would have continued to be valid until midnight of December 31st, when the ground would become forfeited and vacant because no assessment work was done for the year 1896. The court found that the ground was not vacant at the time the Barkley locations were made, but was vacant on January 1, 1897, when plaintiffs made their locations, and therefore found, in effect, that there was no abandonment of the claims by McMillan on December 30th, but that he forfeited them by failing to do the assessment work on them, which failure left them vacant on January 1, 1897.

We think the finding that there was no abandonment is justified by the evidence. "Abandonment," as was said in *Myers v. Spooner*, 55 Cal. 260, "is a question of intention, and of this intention the jury were to judge in view of all the facts and circumstances of the case. It is true, as stated in the brief of counsel for appellants, that Leathe testified at the trial that there was no intention by him or his colocators to abandon the claims. But his testimony to that effect was not conclusive." They knew when they purchased the claims that the assessment work for 1896 had not been done, and that their title would expire with the expiration of the year. They intended, as was explicitly stated, to relocate for themselves; but to wait until January 1st would expose the claims to location by others who had an even chance with them. They could not relocate before

in anyone's name without an abandonment, and to say to each other that they abandoned, and within ten minutes, and without leaving the ground, locate them in the name of a person in New York, and thus burden an absent friend with mining claims which they assert were not, to them, worth doing the assessment work upon, is at least improbable. But we find at the conclusion of Mr. Calm's testimony the statement: "When I went on the ground on the 22d of January I did not look for tools. We had men on the ground at that time, and if I had seen tools they might have been theirs. I did not notice whether there were any tools there that did not belong to us or our men." / 𝟰𝟭𝟳

Who the witness meant by "we" or "us" is not stated. It nowhere appears that Barkley was at any time informed of the location having been made, or that he gave any directions or authority to have any work done. McMillan by his answer disclaimed all right, title, or interest in said claims or either of them; but he testified that he was there in January and April, 1897, and did work on the Mars in April of that year; that the Dauntless and Minerva also had work done upon them in 1897, and added, "I was there in possession of those claims"; that work was done in January and February, and that he was there in possession doing the work when the injunction was served.

McMillan further testified that he was on those claims on December 31st, the day after the alleged abandonment; that "there was no way of getting in there except on horseback, and I went to see if I could find a good place for a wagon road"; and that he was there on January 16th also.

Barkley's deposition was not taken, nor was there any evidence that he was ever informed that these mining claims were located in his name, or that work was being done for him, or that Calm or McMillan were his agents. Barkley's answer was verified by McMillan, but even that he did not do as agent, but as one of the defendants in an action in which he disclaimed all interest.

We have gone into this matter thus fully because of the direct testimony of McMillan and Calm to the alleged abandonment. It was for the trial court to determine the fact, and we think the circumstances justify the conclusion that there was no abandonment.

2. Appellant further contends that plaintiffs have not shown title because "there was no proof that the ground contained veins or lodes of mineral bearing rock in place."

It is said that the ground contained a deposit of borate material or borax, and that such deposits cannot be located as lode claims, but only as placer claims.

The locations made by plaintiffs or their predecessors in interest do not profess to be lode claims, or that they contain veins or lodes of mineral bearing rock in place.

The notices are "that we, the undersigned, have this day located this ground for borate mining purposes," and describe claims fifteen hundred feet long and six hundred feet wide, while appellant's locations describe them as lode claims.

But the point made is immaterial. It is said in Lindley on Mines, section 432: "That, generally speaking, the acts required to be performed in order to complete a valid location under the federal laws applicable to placers, are the same as required in cases of lode locations." (See, also, U. S. Rev. Stats., sec. 2329.) Appellant does not point out any defect in respondents' notices as notices of placer claims, and we perceive none.

It is further contended that the certificates or notices of location of respondents' mining claims do not describe them with reference to natural objects or permanent monuments, nor describe them as being distinctly marked on the ground so that the boundaries could be readily traced.

We think the reference in plaintiffs' location notices to natural objects or permanent monuments is sufficient. The Compromise location states that it is "bounded on the east by the Handy mine, and is one-quarter mile south of Borax road, and about three miles east of the town of Calico." The others are similarly described.

The defendant's notices similarly describe his locations. It may be presumed that if there were natural objects or permanent monuments that would better identify the location of these claims, both plaintiffs and defendant would have referred to them. Notices of location are to be liberally construed. (*Carter v. Bacigalupi*, 83 Cal. 187.)

As to the other branch of the objection, the statute does not

require the record of a mining claim to show that it is distinctly marked on the ground so that its boundaries can be readily traced.   The claim must be so marked upon the ground, but the statement that it is so marked is not required to be inserted in the record.   (U. S. Rev. Stats., sec. 2324.)

Upon the trial the plaintiffs offered in evidence what purported to be the record of their said mining claims, recorded in a book purporting to be the records of the Calico mining district.   This record was produced by the county recorder of said San Bernardino county.   Objection was made by defendant that the record must be accompanied by proof that there was such a district, that there was a rule or custom providing for a record, and that the book was kept by the lawful custodian of it.

This cause was tried while the mining act approved March 27, 1897, existed and was in force, and that act provided that the records of all mining districts should be transmitted to the county recorder of the respective counties in which the districts were situated, and that "thereafter copies of such records, certified by the county recorder, may be received in evidence with the same effect as the originals."   These records were produced by the county recorder, the proper custodian.   It was alleged in the complaint that these mining claims were situated in Calico mining district, and the allegation was not denied.   It was also alleged in the complaint that H. R. Gregory was the duly acting recorder of said district, and there was oral evidence that he was such, and that the notices of location were left with him to be recorded, and the record of the locations was signed by him as such recorder.   This evidence was corroborated by the defendant, who introduced the same book from the custody of the same officer to prove the recording of his claims, and these records were made by the same district recorder who was repeatedly spoken of by defendant's witnesses as the recorder of said district.   If there were any defects in plaintiffs' evidence upon this point we think it was supplied by the defendant; and the production of volume 3 of the records of said district, as well as the fact that defendants, as well as plaintiffs, immediately procured their respective notices of location to be recorded by the recorder of said district, is at least some evidence that there was a rule or custom requiring it.

Our conclusion is that the findings are justified by the evidence, and that there are no errors which would justify a reversal of the judgment. The judgment and order are affirmed.

Hearing in Bank denied.