[Civil No. 1693.    Filed June 14, 1919.]

[181 Pac. 578.]

J. A. HAGAN, Appellant, v. W. W. DUTTON, RICHARD T. O'DONNELL, J. L. AWALT, C. C. DORSEY and MORENCI CONSOLIDATED MINES COMPANY, a Corporation, Appellees.

1. MINES AND MINERALS—LOCATION—DISCOVERY OF MINERALS.—The discovery of mineral within the limits of the mining claim located is a necessary prerequisite to a complete and valid mining location.

2. MINES AND MINERALS—LOCATION—DISCOVERY OF MINERALS—RELOCATION.—Locator need not be the first or original discoverer of mineral on the mining claim located, but may appropriate an abandoned or forfeited discovery by locating the claim as a relocation; it being sufficient if he knew at the time of making his location that there had been a discovery of mineral on the location.

3. MINES AND MINERALS—DISCOVERY OF MINERALS—EVIDENCE.—When controversy is between two mineral claimants, the rule respecting the sufficiency of a discovery of mineral is more liberal than when it is between mineral claimant and one seeking an agricultural entry, since where land is to be taken out of category of agricultural lands, the evidence of its mineral character should be reasonably clear.

4. MINES AND MINERALS—DISCOVERY OF MINERALS—FACT QUESTION FOR TRIAL COURT.—Whether there had been a discovery of minerals on mining claim was a question of fact for trial court under the evidence.

5. MINES AND MINERALS—DISCOVERY OF MINERALS—SUFFICIENCY OF EVIDENCE.—Evidence *held* to warrant finding that there had been a sufficient discovery of minerals upon mining claim to satisfy statutory requirement.

6. MINES AND MINERALS—DISCOVERY OF MINERALS—FINDING.—In suit to quiet title to mining claims, involving conflicting claims of mineral claimants, finding of failure of evidence to disclose minerals in place *held* to have reference to disclosing mineral in place in the discovery shaft required to be sunk within ninety days after location, under Civil Code of Arizona of 1913, paragraph 4030, subdivision 2, and not to discovery of minerals upon the claim.

7. MINES AND MINERALS—QUIETING TITLE TO MINERAL CLAIMS—MATERIALITY OF FINDING.—In action to quiet title to mining claims, where defense was invalidity of location by plaintiff's predecessors in interest because land had previously been located by defendant's predecessors, finding as to whether defendant's predecessors had complied with statute as to disclosing mineral in place in discovery shaft was immaterial, since cross-complaint had been dismissed and judgment did not determine defendant's title to land.

8. MINES AND MINERALS — RELOCATION — MONUMENTS — ADOPTION.— Monuments placed upon land by relocator the day before the claim became open to location, where no objection thereto was made by locator then upon land, could be legally adopted by relocator upon relocating upon land the following day when it became open to location.

9. MINES AND MINERALS — MONUMENTS — ADOPTION BY RELOCATOR.— Monuments existing on the ground at the time of the location may be adopted by a relocator.

10. MINES AND MINERALS—LOCATION NOTICES.—Some precaution must be taken by prospector to protect his location notice from destruction.

11. MINES AND MINERALS—LOCATION NOTICE—SUFFICIENCY OF EVIDENCE.—Evidence *held* to show substantial compliance with Civil Code of Arizona of 1913, paragraph 4028, requiring posting of location notice upon conspicuous monument of stones, or upon securely fixed upright post, at least four feet out of ground.

12. MINES AND MINERALS—PRIOR LOCATION.—Attempted location upon land withdrawn from the public domain by a prior, valid and subsisting location is wholly void for purpose of founding any right or claim to the land.

[As to basing location of additional ground on discovery of abandoned location, see note in 139 Am. St. Rep. 165.]

APPEAL from a judgment of the Superior Court of the county of Greenlee. Samuel L. Pattee, Judge. Affirmed.

Mr. L. Kearney, for Appellant.

Mr. H. A. Elliott, for Appellees.

BAKER. J.—The appellant, as plaintiff in the court below, brought suit in the superior court of Greenlee county, against the appellees, as defendants in the court below, to quiet title to certain mining claims situated in the Copper Mountain mining district in Greenlee county, Arizona, known as the Olive group of mining claims. The complaint alleges that the plaintiff was the owner and in possession, and entitled to the possession, of the said mining claims by virtue of valid mining locations made on the eighteenth day of January, 1917. The defendants, Richard T. O'Donnell, J. L. Awalt and Morenci Consolidated Mines Company, a corporation, each filed a disclaimer of any right or title in and to said mining claims adverse to the plaintiff. The defendant C. C. Dorsey made no appearance and filed no answer. The defendant W. W. Dutton, appeared and answered, denying the validity of the Olive group of mining claims, and alleged that he was the owner and entitled to the possession of the Red Metal group of mining claims (said claims being the identical ground covered by the "Olive" group of mining claims) by virtue of valid mining locations made on the first day of January, 1917. Dutton also filed a cross-complaint, seeking to quiet title to the said "Red Metal" group of mining claims as against the plaintiff. This cross-complaint, on Dutton's motion, was dismissed by the court, which action narrowed the issues in the case to the sole question of the validity of the plaintiff's location of the "Olive" group. The lower court found the facts to be: That J. L. Awalt, the predecessor in interest of the defendant Dutton, initiated valid locations of the "Red Metal" mining claims on January 1, 1917, and subsequently transferred his interest in the claims, by good and sufficient deed, to the defendant Dutton; and that at the time of the location of the "Olive" group of mining claims by the plaintiff's predecessor in interest, the ground was segregated from the public domain and not open to location. Upon these findings, the court entered judgment, and decreed that the

plaintiff had no right, title or interest in and to the mining claims in question. The judgment carried costs for the defendant Dutton, but made no determination of his rights or title to the ground. The plaintiff appeals from the judgment and the order denying a new trial.

The ground in controversy was first located by R. T. O'Donnell, one of the defendants, in the year 1915, known as the O'Donnell group of claims. O'Donnell failed to do the annual work upon the claims, required by law, for the year 1916, and it was stipulated and agreed by the parties that on the first day of January, 1917, the ground in controversy was open, unappropriated mineral land of the United States, and subject to be located as mineral ground under the mining laws of the United States and the statutes of the state of Arizona. The "Olive" and "Red Metal" locations covered the same identical ground, and was formerly comprised in, the said O'Donnell group of claims.

The defendant Awalt, acting on behalf of the defendant Dutton, entered upon the ground embraced in what was then known as the O'Donnell claims on December 31, 1916, and erected discovery monuments in anticipation of the claims coming open to location on the following day. The evidence is fairly conclusive that on the following day location notices, which had been previously prepared, were posted or placed in each of the several discovery monuments that had been erected the day before (the notices denominating the claims as "Red Metal"), and the evidence is undisputed that Awalt transferred whatever interest he had acquired by virtue of these acts to the defendant Dutton, who thereafter attempted to complete the location work upon the claims within the ninety days allowed by law.

It is admitted that on January 18, 1917, one Olive, acting on behalf of the plaintiff, went upon the ground in controversy and erected discovery monuments and posted location notices thereon (designated as the "Olive" group of claims), and thereafter, within the time and manner as required by law, performed all acts required by the statute to perfect the locations of the "Olive" claims, and that he subsequently conveyed said "Olive" group of claims to the plaintiff.

The decisive question in the case is: Was the property vacant and unoccupied mineral land of the government and subject to location on the eighteenth day of January, 1917,

when the plaintiff's predecessor in interest entered and located the ground? If it was, the judgment should be reversed; if it was not, the judgment should be affirmed.

The plaintiff first contends that there was no evidence tending to prove that a discovery of mineral was made by either Dutton, or his predecessor in interest Awalt, before the monuments of the "Red Metal" group were put up, or at any time afterwards.

That discovery of mineral within the limits of the mining claim located is a necessary prerequisite to a complete and valid mining location is thoroughly settled by a long line of decisions. The rule is well known to anyone at all familiar with mining law. 2 Lindley on Mines, 3d ed., par. 335, and cases cited in note.

But a locator need not be the first or original discoverer of mineral on the mining claim located. He may appropriate an abandoned or forfeited discovery by locating the claim as a relocation, and it is sufficient if he knew at the time of making his location that there had been a discovery of mineral on the location. 2 Lindley on Mines, 3d ed., par. 335, and cases cited in note.

It is to be observed that both of the parties in this case are in the position of prospectors or explorers upon the public domain, both claiming to have made valid mineral locations. " . . . When the controversy is between two mineral claimants, the rule respecting the sufficiency of a discovery of mineral is more liberal than when it is between a mineral claimant and one seeking . . . an agricultural entry, for the reason that where land is sought to be taken out of the category of agricultural lands the evidence of its mineral character should be reasonably clear, while in respect to mineral lands, in a controversy between claimants, the question is simply which is entitled to priority." *Chrisman* v. *Miller,* 197 U. S. 313, 49 L. Ed. 770, 25 Sup. Ct. Rep. 468; 2 Lindley on Mines, 3d ed., par. 336.

The testimony in behalf of the defendant Dutton, in respect to the discovery of mineral on the "Red Metal" claims, is slight, and not as strong and convincing as might be desired, yet we think it is sufficient to bring the case within the rule announced in the authorities just cited. The location of the "Red Metal" group of claims was a relocation of the O'Donnell claims. Any mineral disclosed by the work done on the

claims by O'Donnell, and known to Awalt, was a sufficient discovery of mineral upon which Awalt could base a location. Awalt, in behalf of the defendant Dutton, testified that there was a great deal of mineralized porphyry in all the country where the contested claims were located; that the ground covered by the "Red Metal" claims was mineralized porphyry heavily iron stained, and seamed with iron; that the district was what is termed a "Porphyry District" where big bodies of ore were found in the porphyry; and that miners locating the porphyry expected to find mineral when they dug down. Arhelger, another witness testifying in behalf of the defendant, stated that the ground covered by the contested claims was mineralized porphyry. Bingham, a witness testifying on behalf of the plaintiff, stated that the porphyry where the contested claims were located is of a character in which copper deposits are found. Hagan, the plaintiff, himself testified, substantially, that porphyry covers the entire district; and that there were some copper stains in the "Red Metal" locations. Whether or not the discovery of mineral had been made on the "Red Metal" claims was a question of fact for the trial court to determine under the evidence. It is true there is some conflict in the testimony on that point, but we cannot say that the court was without authority in finding that there was a sufficient discovery of mineral to satisfy the statutory requirement in that particular.

The plaintiff, however, insists that the findings of fact show that there was no discovery of mineral on any of the "Red Metal" claims. This contention is evidently based upon an equivocal finding of the trial court, in the following language:

"The court has great doubt whether the testimony shows disclosure of mineral in place in any of the defendant's claims (Red Metal claims) to comply with the statute in that respect, and does not find that such discovery was made."

Evidently the court by this finding referred to the necessity of disclosing mineral in place in the discovery shaft, which the statute (subdivision 2, par. 4030, Civil Code), requires to be sunk within ninety days after the location. The issue as to whether the defendant Dutton had disclosed mineral in place in the discovery shaft or whether he had performed location work sufficient to measure up to the statutory requirements, could only bear upon the rights of the defendant Dutton to permanent relief under his cross-complaint.

This cross-complaint had been dismissed, and the judgment in no wise determined the title or rights of the defendant Dutton to the ground, and hence the finding in question was immaterial.

The plaintiff contends, in the second place, that no discovery monuments were erected on the "Red Metal" claims by the defendant Dutton, or his predecessor in interest Awalt. No question is raised as to the facts that Awalt built discovery monuments on the claims on December 31, 1916, or as to the sufficiency of these monuments in dimensions. But it is claimed that these monuments were built at a time when the ground was not open to location. We see no force in this objection. O'Donnell, who was present upon the ground and had knowledge of the erection of the monuments and the preparation of the location notices which were placed therein, made no objection.

It is settled that discovery monuments existing on the ground at the time of the location may be adopted by a relocator; that either rebuilding partially existing monuments or availing himself of existing monuments by using them is a compliance with the law, and the use of such monuments for the purpose of marking the boundaries of a claim is a sufficient compliance with the statute, and sufficient to create a valid location, other requirements of the law having been performed. *Bergquist* v. *West Virginia-Wyoming Copper Co.*, 18 Wyo. 234, 106 Pac. 673; *Riverside Cement & Sand Mfg. Co.* v. *Hardwick*, 16 N. M. 479, 120 Pac. 323.

Applying the logic of the cases that permit the adoption of a monument, we can see no just reason why the relocator of the "Red Metal" claims could not legally adopt and use the monuments on the first day of January, 1917, which he had erected on December 31, 1916.

The plaintiff's third contention consists of an attack upon the finding of the court that legal and sufficient location notices of the "Red Metal" claims were posted in the discovery monuments. No objection is made to the form or the contents of the notices of location. The contention is that the notices were concealed or hidden. The evidence on behalf of the plaintiff is to the effect that the notices were found in the monuments under the ground; that it appeared as if the monuments had been built first and the notices stuck in the crevices between the rocks, where they come together;

some of these (notices) had fallen and dropped on the ground; others were on the rocks; they were loose, and dirt and gravel had been thrown over them, hiding them from view, so they could not be seen, and to get at the notices the monuments had to be partly torn down, or one had to get a stick and scratch the dirt out and reach in to pull the notices out. Some of the witnesses said that when someone who had knowledge of where the location notices were called their attention to the fact that they had looked in the wrong portions of the monuments to discover the notices, they returned to the monuments, and without any apparent difficulty discovered the notices inside of the monuments. Awalt testified for the defendant that he stuck the notices in the cracks of the monuments and plugged it up with rocks that fitted in the cracks, and then raked up some gravel and threw it on top of the notices to keep the rats from pulling them out of the monuments, as he did with all of his location notices.

It is manifest that some precaution must be taken by a prospector to protect his location notice from destruction. 2 Lindley on Mines, 3d ed., par. 356.

The authorities strongly tend towards sustaining the sufficiency of posting location notices, wherever possible. *Bergquist* v. *West Virginia-Wyoming Copper Co., supra; Donahue* v. *Meister,* 88 Cal. 121, 22 Am. St. Rep. 283, 25 Pac. 1096.

Courts are not inclined to defeat the claim of him who has in good faith attempted to comply with the law. *Gold Creek Antimony Mines & Smelter Co.* v. *Perry,* 94 Wash. 624, 162 Pac. 996; *Gird* v. *California Oil Co.* (C. C.), 60 Fed. 531; *Bergquist* v. *West Virginia-Wyoming Copper Co., supra.*

The statutes of some of the states require that notices shall be *conspicuously* posted on the claim. Our statute does not go this far. It demands a conspicuous monument of stones, or an upright post securely fixed, projecting at least four feet above the ground, in which monument of stones, or on which post, there shall be posted a location notice, etc. (Civil Code, par. 4028.) We find no indication in the evidence that there was any intentional concealment of the notices, and it fairly appears that there was a substantial compliance with the statute in posting the notices, and we shall not disturb the finding of the court that sufficient and legal notices of location had been posted on the Red Metal claims.

The plaintiff makes a fourth contention that it was error in the court to find that there was no collusion between O'Donnell, the original locator of the ground and Awalt and the defendant Dutton, to the effect that O'Donnell should fail to do the annual work on the O'Donnell group of mines for the year 1916, with the understanding that Awalt and Dutton should relocate the ground as the Red Metal claims for the use and benefit of the said O'Donnell. The plaintiff offers us no argument in support of this contention, and we are satisfied from an examination of the record that the finding of the court was fully sustained by the evidence.

Finally, the lower court having determined that Awalt, on January 1, 1917, initiated a valid mining location on all the claims known as the "Red Metal" group, and the findings of the court in that behalf being fully sustained by the evidence, it follows, as a matter of law, that the attempted location of the same ground by the plaintiff, on the eighteenth day of January, 1917, as the "Olive" group of claims, was wholly void for the purpose of founding any right or claim to the ground.

At the time of the plaintiff's location of the "Olive" group of claims, the ground in controversy had been withdrawn from the public domain by the prior, valid and subsisting location of the "Red Metal" claims.

In *Swanson* v. *Sears*, 224 U. S. 180, 56 L. Ed. 721, 32 Sup. Ct. Rep. 455, the United States supreme court said:

"A location and discovery on land withdrawn *quoad hoc* from the public domain by a valid and subsisting mining claim is absolutely void for the purpose of founding a contradictory right. *Belk* v. *Meagher*, 104 U. S. 279 [26 L. Ed. 735]; *Gwillim* v. *Donnellan*, 115 U. S. 45 [5 Sup. Ct. 1110, 29 L. Ed. 348]."

See, also, *Omar* v. *Soper*, 11 Colo. 380, 7 Am. St. Rep. 246, 18 Pac. 443; *Sierra Blanca M. Co.* v. *Winchell*, 35 Colo. 13, 83 Pac. 628; 2 Lindley on Mines, 3d ed., pars. 339, 645a, and cases cited in notes.

There is no error in the record, and the judgment and order of the superior court are affirmed.

CUNNINGHAM, C. J., and ROSS, J., concur.

On the question of location of mining claims generally, see comprehensive note in 7 L. R. A. (N. S.) 763.