[Civ. No. 5919.   Third Appellate District.—December 21, 1938.]

CHARLES W. KRAMER, Respondent, v. GLADDING, McBEAN & COMPANY (a Corporation) et al., Defendants; U. S. MACHINERY COMPANY (a Corporation), Appellant.

Charles L. Gilmore for Appellant.

Joseph H. Huberty for Respondent.

THE COURT.—Upon rehearing of this cause it appears the defendant, U. S. Machinery Company, a corporation, has appealed from a judgment quieting title in the plaintiff to twenty-seven quartz mining claims in Mill Valley Mining District, Calaveras County, California. The appellant contends that it acquired title to two of those claims called the "Buckhorn" and the "Gold Cliff" from Gladding, McBean & Company to whom they had been previously conveyed by sheriff's deeds after an execution sale thereof to satisfy a judgment against Frederick H. Rindge, the alleged owner. The evidence shows that the "Gold Cliff" claim is the only one involved in this suit which was described in the sheriff's deed. The appellant asserts no title to any of the parcels other than the two claims mentioned. Gladding, McBean & Company filed an answer disclaiming all right, title and interest in the twenty-seven mining claims. Frederick H. Rindge, the original locator of the mining claims, is not a party to this suit.

It is contended by the appellant, with respect to the Buckhorn and Gold Cliff quartz mining claims, that the findings and judgment fail to support plaintiff's asserted title thereto for the reason that it does not appear the former locator forfeited or abandoned his claims before the plaintiff's grantor relocated them, and because there is no evidence the relocator *discovered* a vein or lode of quartz thereon.

The record is undisputed that between the years 1922 and 1928, Frederick H. Rindge located these same twenty-seven mining claims as required by law; that he performed the statutory assessment work until 1930, and expended in developing the claims the aggregate sum of $122,785; that he performed no assessment work on any of the claims after 1930, and thereby forfeited them; that Harda Kramer, the wife of one Adam Kramer, an experienced mining man, relocated these same twenty-seven quartz mining claims, including the Buckhorn and Gold Cliff claims, on February 13, 1935, and a few days later conveyed them to the plaintiff, Charles W. Kramer; that on June 20, 1935, Sheriff Zwinge, of Calaveras County, deeded the Gold Cliff claim only, together with other property not involved in this suit, to Gladding, McBean & Company, pursuant to an execution sale of the property to satisfy a judgment previously secured against Frederick H. Rindge; that the sheriff's deed does not purport to convey any

of the twenty-seven mining claims involved in this suit, with the exception of the Gold Cliff claim; that on August 27, 1935, Gladding, McBean & Company conveyed the same property received by the sheriff's deed, to the appellant, U. S. Machinery Company; that the twenty-seven quartz claims were relocated February 13, 1935, by Harda Kramer by posting and recording the notices thereof as required by sections 1426 et seq. of the Civil Code; that at the time the claims were relocated Harda Kramer knew of the original discovery of quartz by Mr. Rindge, and that gold-bearing quartz in place was then found on the claims. All of the assessment work which is required by law has been performed since the relocation of the claims.

After conveyance of the real property, including the Gold Cliff claim which is involved in this suit, from Sheriff Zwinge of Calaveras County to Gladding, McBean & Company, this suit to quiet title to the twenty-seven mining claims was instituted August 27, 1935. The cause was tried and the court adopted findings favorable to the plaintiff on every essential issue. It was determined that the plaintiff is the owner and entitled to the possession of all of said claims, and that the appellant has no right, title or interest in any of them. Judgment was accordingly rendered for the plaintiff. From that judgment the U. S. Machinery Company has appealed.

We are of the opinion the findings and judgment are adequately supported by the evidence. There is substantial proof that Frederick H. Rindge, the original locator, forfeited his right to the claims for non-performance of his assessment work for several consecutive years before the relocation thereof. He is not a party to this suit and is making no claim to the property. The regularity of his original location proceedings is not questioned. The evidence is uncontradicted that he performed no assessment work on any of the claims after 1930. No notice was ever filed by him in the office where the location was recorded, declaring that he was desirous of retaining the claims pursuant to the act of Congress suspending the performance of annual assessment work. He was in default of the performance of his assessment work for several years from 1930 to 1935.

The question of the abandonment of an original location of mining claims depends upon the intention of the locator to relinquish his possession and right to the property which

must be determined from the facts and circumstances of each particular case. (*McCann* v. *McMillan*, 129 Cal. 350 [62 Pac. 31]; *Clarke* v. *Mallory*, 22 Cal. App. (2d) 55, 59 [70 Pac. (2d) 664]; 1 Cal. Jur. 10, sec. 7; 17 Cal. Jur. 354, sec. 47.) There is, however, a clear distinction between the abandonment of a claim and the mere forfeiture thereof for failure to perform the necessary work required by law. (2 Lindley on Mines, 2d ed., p. 1198, sec. 643; 60 A. L. R., p. 926, note.) Section 1426*l* of the Civil Code provides that:

"The amount of work done or improvements made during each year to hold possession of a mining claim shall be that prescribed by the laws of the United States, to wit: One hundred dollars annually."

The requirement to perform annual work upon a mining claim of the value of one hundred dollars is in accordance with the provisions of section 2324 of the Revised Statutes of the United States. (Sec. 4620, U. S. Comp. Stats. of 1918; Title 30, Sec. 28, U. S. C. A.) The last-mentioned section provides in part that:

"Upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made."

A forfeiture of a mining claim occurs by operation of law when the locator fails to preserve his rights by complying with the conditions imposed by the mining laws whether the statute expressly so provides or not, and that forfeiture becomes effectual upon a valid relocation of the same mining claim. (*Street* v. *Delta Min. Co.*, 42 Mont. 371 [112 Pac. 701]; 40 C. J. 844, sec. 301.) When a party relying upon a forfeiture of a mining claim shows that no work was performed by the original locator within the period of one year as required by law, he establishes a *prima facie* case entitling him to possession, in the absence of evidence to the contrary. (40 C. J. 846, sec. 303.) In the present case the plaintiff established a *prima facie* showing that Frederick H. Rindge, the original locator, forfeited his rights to the claims which are involved in this action. The forfeiture of rights to a mining claim for failure to perform the statutory work thereon, before a patent has been issued, renders the claim subject to relocation. (*Russell* v. *Brosseau*, 65 Cal. 605 [4 Pac. 643]; *Clarke* v. *Mallory*, 22 Cal. App. (2d) 55, 63 [70

Pac. (2d) 664]; 17 Cal. Jur. 401, sec. 78; 18 R. C. L. 1135, sec. 46; 40 C. J. 846, sec. 306.)

■ The appellant asserts that Frederick H. Rindge did not forfeit his right to the claims for nonperformance of his assessment work after 1935 for the reason that Congress adopted resolutions in 1931, 1932, 1933 and 1934, temporarily suspending the statutory requirement of performing the assessment work on mining claims pursuant to section 2324 of the United States Revised Statutes during those current years on account of the depression which existed. We are of the opinion there is no merit in this contention for the reason that in 1933 and 1934 the suspension of annual assessment work on mining claims for those current years was authorized only conditionally, and not as an absolute right. (48 U. S. Stats., p. 72, and p. 777, 29 and 30 U. S. C. A., sec. 28a, p. 87, 1938 Cumulative Annual Pocket Part.) The resolutions for 1933 and 1934 both include a similar condition. The 1933 resolution suspending for that year the necessity of performing assessment work of the value of $100 as provided by section 2324 of the Revised Statutes of the United States contains the following proviso:

"That the provision of this act shall not apply to the case of any claimant *not entitled to exemption from the payment of a Federal income tax for the taxable year 1932:* Provided further, that every claimant of any such mining claim, in order to obtain the benefits of· this act, *shall file, or cause to be filed, in the office where the location notice or certificate is recorded, on or before 12 o'clock meridian, July 1, 1933, a notice of his desire to hold said mining claim under this act, which notice shall state that the claimant, or claimants, were entitled to exemption from the payment of a Federal income tax for the taxable year 1932.*"

In *In re Suncrest Packers, Inc.,* 8 Fed. Supp. 917, the court has construed the preceding language to constitute the creation of "a condition precedent that the locator or owner file a notice of desire to hold the claim or claims", in order to exempt him from the performance of the required annual assessment work. In the present case no such notice was filed by Mr. Rindge so as to exempt him from the performance of the statutory assessment work during the years of 1933 and 1934. Having failed to perform the assessment work in those two years, we must assume in support of the findings and

judgment, that the claims, in the language of section 2324 of the U. S. Statute, thereupon became "open to relocation", in the absence of a showing that he was exempt from performing the work according to the provisions of the resolution above quoted. It follows that there is a *prima facie* showing in this case of the forfeiture of Mr. Rindge's title to the mining claims in question.

In this case there is ample evidence of the discovery of "a vein or lode of quartz, or other rock in place, bearing gold, silver, cinnabar", etc., to conform to the requirements of section 1426 of the Civil Code, for the purpose of relocation of the mining claims. The depth, size or quantity of a gold or silver bearing vein of quartz authorizing the location of a mining claim is not material. (*Stinchfield* v. *Gillis*, 96 Cal. 33, 37 [30 Pac. 839]; *Jupiter Min. Co.* v. *Bodie Cons. Min. Co.*, 11 Fed. 666, 675; 17 Cal. Jur. 318, sec. 26; 18 R. C. L. 1121, sec. 32; *Nevada Sierra Oil Co.* v. *Home Oil Co.*, 98 Fed. 673, 677.) In the case last cited it is said in that regard:

"When the locator finds rock in place containing mineral, he has made a discovery, within the meaning of the statute, whether the rock or earth is rich or poor, whether it assays high or low. It is the finding of the mineral in the rock in place, as distinguished from float rock, that constitutes the discovery, and warrants the prospector in making a location of a mining claim."

In 18 Ruling Case Law at page 1122, section 32, it is said:

"When the locator finds rock in place, containing mineral, he has made a discovery, within the meaning of the statute, whether the rock or earth is rich or poor, whether it assays high or low, and though it be merely a crevice or seam filled with mineral deposit."

In the same section last quoted from, it is further said:

"The well established test is that to constitute a valid location there must be such a discovery of mineral as that an ordinarily prudent man, not necessarily a miner, would be justified in expending his time and money thereon in the development of the property."

In this case it appears that the original locator actually expended the sum of $122,785 in developing the claims before he forfeited them by a nonperformance of assessment work. Adam Kramer, an experienced miner, testified regarding the presence of gold-bearing quartz at the time of the relocation:

"There is a ledge on the Gold Cliff that runs out underneath the barn. There is also a ledge that runs across from the face of the tunnel and connects up across the creek, *which is in place*. . . . Q. And was there at that place a vein of gold-bearing rock or quartz? A. There is. Q. From what you know of this property, . . . do you think a prudent man would be reasonably justified in expending time and money with the expectation of developing a paying mine? A. I do positively."

Mr. Oliver C. Wyllie, a licensed mining and civil engineer, who made the original survey of the claims for Mr. Rindge, testified with respect to the relocation:

"Q. Mr. Wyllie, at the points where these location notices were posted on the twenty-seven several and respective claims, was there a vein or lode of quartz in place bearing gold or other mineral? A. I think in practically every place there was some sort of a showing. . . . I would say in pretty nearly every case, there was a showing of quartz or something that would possibly justify a locator in locating a mining claim."

Harda Kramer, the relocator of the claims, testified:

"Q. And did you discover any rock or mineral bearing rock vein at that point? A. Yes, we discovered . . . rock."

This furnishes sufficient evidence of the discovery of gold-bearing quartz by Harda Kramer on the Gold Cliff and other mining claims at the time she relocated them, to conform to the requirements of section 1426.

In addition to the preceding evidence of the discovery of the presence of gold-bearing quartz in place at the time of the relocation, it appears that Harda Kramer, and Adam Kramer, who was then present with her, found much evidence of excavations and mining operations on those claims which had been previously conducted by the original locator thereof. They had a right to accept, adopt and take advantage of the discovery of quartz by the original locator. In the absence of a statute to the contrary, a relocator of a quartz mining claim may avail himself of the original locator's discovery of gold-bearing quartz in place, particularly if the evidence of such discovery is apparent to the sight of the relocator. (1 Lindley on Mines, 2d ed., 723, sec. 403; 68 L. R. A. 845, note; 18 R. C. L. 1136, sec. 46; *Gwillim* v. *Donnellan,* 115 U. S. 45 [5 Sup. Ct. 1110, 29 L. Ed. 348]; *Hagan* v. *Dutton,* 20 Ariz. 476 [181 Pac. 578].) In the last-cited case, quoting

with approval from 2 Lindley on Mines, third edition, section 335, it is said:

"But a locator need not be the first or original discoverer of mineral on the mining claim located. He may appropriate an abandoned or forfeited discovery by locating the claim as a relocation, and it is sufficient if he knew at the time of making his location that there had been a discovery of mineral on the location."

In 18 Ruling Case Law, at page 1136, it is likewise said:

"The relocator of an abandoned mining claim has the same length of time to perform each of the acts of location subsequent to discovery as the original locator; *and he may, in the absence of a local statute or custom to the contrary, avail himself of the original locator's discovery.*"

In the case of *Hagan* v. *Dutton, supra,* it is said a locator need not be the first or original discoverer of mineral for the valid locating of a claim, but he may appropriate an abandoned or forfeited discovery by relocating the same claim. It is sufficient if he knew at the time of making his relocation that there had been a discovery of mineral on the claim. To relocate a mineral claim it is necessary that the locator shall have personal knowledge of the former discovery of mineral thereon, or that he himself shall find evidence of its presence in quantity sufficient to justify a reasonable man in furnishing adequate labor and money to develop the claim.

Finally, the appellant contends that the evidence in this case fails to conform to the requirements of section 1426dc of the Civil Code to accomplish a valid relocation of mining claims. That section provides:

"The relocation of any lode or placer mining location which is subject to relocation shall be made in the same way as an original location is herein required by law to be made, except that the relocator may either sink a new shaft upon the ground relocated at the discovery point to the depth of at least ten feet from the lowest part of the rim of such shaft at the surface, exposing the deposit upon which location is based, or drive a new tunnel, adit, or open cut upon such ground at the point of discovery to at least ten feet below the surface, exposing the deposit upon which location is based; or the relocator may sink the original discovery shaft ten feet deeper than it is at the time of relocation, or drive

the original tunnel, adit, or open cut upon such claim ten feet further.''

It is unnecessary to construe the preceding section for the reason that it was not adopted until 1935, and did not become effective until September 15th of that year. (Stats. 1935, p. 2259.) The claims which are involved in this case were relocated February 13, 1935. Section 1426dc was not in existence when these claims were relocated. There was then no statute in this state upon the subject of relocation of mineral claims.

The judgment is affirmed.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 16, 1939.