[Civ. No. 7017. Third Dist. Apr. 29, 1944.]

G. A. BIGELOW et al., Appellants, v. SAN JUAN GOLD COMPANY (a Corporation), Respondent.

Wm. F. Rose and H. Ward Sheldon for Appellants.

Thomas R. White, Francis B. Perry and Lynne Kelly for Respondent.

THOMPSON, J.—The plaintiffs have appealed from that portion of a judgment which quiets title in the defendant, San Juan Gold Company, a corporation, to several contiguous unpatented placer mining claims situated in Nevada County. After the claims were separately located prior to 1872, they were purchased by the defendant in 1906, and consolidated for the purpose of mining operations. They are designated as "Union Lot 59A" and contain 192.32 acres of land. Assuming that these claims had been forfeited by defendant's failure to perform assessment work in certain specified years, of the value of $100 on each lot contained in that tract, the plaintiffs located a larger tract in 1930, consisting of six contiguous placer mining claims, called the "Trood Claims," numbered from 1 to 6 inclusive, and containing 373 acres of land. Defendant's "Union Lot 59A" was included within the boundaries of the six Trood claims. The plaintiffs thereafter performed annual labor upon each of said Trood claims in excess of the value of $100, and also expended some $30,000 in constructing buildings, purchasing machinery and making improvements for a mining enterprise.

Plaintiffs commenced this action to quiet title to said Trood placer mining claims. The defendant filed an answer and cross-complaint denying plaintiffs' alleged title to "Union Lot 59A," or any portion of that consolidated claim, and affirmatively asserted its ownership and right to possession thereof, together with another placer mining claim designated "Consolidated Lot No. 46." There is no dispute regarding the title to said Lot 46.

The court adopted findings to the effect that "Union Lot 59A" consists of not less than twelve separate contiguous placer mining claims which were duly located prior to 1866 in Kennebec Hill Mining District of Nevada County; that "subject to the paramount title of the United States," said claims became vested in Union Gravel Mining Company, a corporation, on or about February 11, 1875; that none of

said claims was thereafter abandoned, forfeited or relocated; that by mesne conveyances titles to said claims were transferred to the defendant, San Juan Gold Company, a corporation, on or about June 30, 1906; that said contiguous placer mining claims, consisting of 192.32 acres of land, were combined and operated as one tract, and ever since 1909 the defendant "treated, regarded, and held out to all the world said 'Lot 59A' as a single placer mining claim"; that the defendant annually performed work of the value of $100 upon said consolidated "Union Lot 59A" and paid all taxes thereon except that in certain specified years during which the federal statutes waived the performance of assessment work, none was done, but for said years of nonperformance affidavits of exemption were filed as required by law.

The court further found that subsequent to the original locations of said placer mining claims and defendant's acquisition of title thereto, the plaintiffs located six separate contiguous placer mining claims in Nevada County, during and after 1930, designated as the "Trood Placer Mining Claims" Nos. 1 to 6 inclusive, containing 373 acres of land and including within their boundaries "all the area comprising 'Lot 59A,' " which Trood claims they thereafter occupied "subject to the claim of defendant corporation San Juan Gold Company to said 'Lot 59A,' " and thereafter performed annual labor upon each of said Trood claims of the value of $100, and expended in further improvements and operating expenses on said premises the sum of $30,000.

Based upon those findings the court rendered judgment quieting title in the defendant, San Juan Gold Company, to the placer mining claims designated as "Union Lot 59A" together with another mining claim called "Consolidated Lot No. 46." Title to the remaining portion of the six Trood placer mining claims described in the complaint was quieted in plaintiffs as prayed for. From that portion of the decree quieting title in the defendant to "Union Lot 59A" the plaintiffs have appealed.

The appellants contend that the respondent forfeited its title to Union Lot 59A by failing to perform annual assessment work of the value of $100 on each of the claims contained within that tract, and that the burden was on the respondent to prove affirmatively that it had performed all assessment work thereon as required by the statutes and the

rules of Kennebec Hill Mining District, in which said claims were located.

■ The question of forfeiture of a mining claim, as distinguished from abandonment thereof, depends entirely upon proof of the violation of the federal or state statutes with relation to the performance of annual assessment work, or upon a violation of the district mining rules in that regard. (*Kramer* v. *Gladding, McBean & Co.*, 30 Cal.App.2d 98 [85 P.2d 552].) The sole question is whether the terms of the statutes or the district rules have been complied with. (2 Lindley on Mines, 3d ed., 1597, § 643.) In the present case, the trial court found that Union Lot 59A consists of at least twelve contiguous claims, aggregating 192.32 acres of land, which claims were separately located by respondent's predecessors in title prior to 1866, and subsequently acquired by Union Gravel Mining Company, a corporation, on February 11, 1875, and thereafter purchased by the respondent on June 30, 1906, and consolidated by it for the purpose of operating a placer mining enterprise; that during certain designated years prior to 1930, when the plaintiffs relocated the claims, the respondent performed annual labor on said Union Lot 59A of the value of only $100 per year. In other language, by necessary inference the court found that the respondent failed to perform more than $100 worth of work on said entire consolidated group of claims during any one of those designated years. The record supports that affirmative finding. The theory upon which the court concluded that respondent's title to the claims was not forfeited for failure to perform the required annual assessment work was that, in spite of the fact that it had not performed $1,200 worth of work per annum on said twelve claims during those designated years, it had nevertheless fulfilled the requirements of the statutes by doing $100 worth of work per annum on Union Lot 59A because "ever since the year 1909" the respondent "treated, regarded, and held out to all the world said 'Lot 59A' as a single placer mining claim."

■ When the law requires annual assessment work to be performed the owner of mining claims may forfeit his title for failure to conform to the law when someone else has entered with intention to relocate the claims. (*Kramer* v. *Gladding, McBean & Co., supra;* 2 Lindley on Mines, 3d ed., 1598, § 643; 30 U.S.C.A. 147, § 28.) ■ It is true that an association of persons, since May 16, 1872, may jointly

locate a mining claim containing not more than 160 acres of land and may fulfill the requirements of the law by annually performing work on the tract for the benefit of all claims of the value of $100 only. (*Reeder* v. *Mills,* 62 Cal. App. 581 [217 P. 562].) But when several contiguous claims are separately located, even though they may be subsequently consolidated for mining operations, while annual assessment work may be done on one claim for the benefit of all of them, the work must aggregate in value the sum of $100 for each consolidated claim. (*Morgan* v. *Myers,* 159 Cal. 187 [113 P. 153]; *Chambers* v. *Harrington,* 111 U.S. 350 [4 S.Ct. 428, 28 L.Ed. 452]; 17 Cal.Jur. 393, § 73; 2 Lindley on Mines, 3d ed., 1553, § 630(3); 30 U.S.C.A. 200, notes, 323, 324.) In the present case the respondent did not perform annual assessment labor during certain specified years of a value in excess of $100 on the consolidated claims designated Union Lot 59A.

Since the record in this case does affirmatively show that Union Lot 59A consists of twelve placer claims which were separately located prior to 1866 by respondent's predecessors in title, and that respondent performed only $100 worth of work annually on the entire tract during several years prior to plaintiffs' relocation of the claims, we are of the opinion the court erred in determining that was a sufficient compliance with the statutes and that its title was therefore not forfeited on that account. Since the twelve claims were originally separately located, the respondent was not authorized by law to subsequently purchase and consolidate them for placer mining purpose and thus escape from the necessity of fulfilling the statutes with respect to annual assessment work by merely performing $100 worth of labor per annum on the entire group of claims. This is true even though the purchaser of separately located claims subsequently consolidates them and "holds them out to the world" as one placer mining claim. There is a clear distinction between a "mining claim" and a "location." In 2 Lindley on Mines, 3d ed., p. 1539, § 628, the author says in that respect:

"A, B and C each perfect a lode location on the same vein, the locations being contiguous. Each is required, under the law, to work, or represent, his individual claim to the extent of one hundred dollars annually. A subsequently purchases the locations of B and C, and the three locations may consti-

tute his 'claim' in a colloquial sense. But he will not be permitted thereafter to hold all three by performing simply one hundred dollars' worth of work within the limits of one, or distributing that amount in labor and improvements over the three.''

On page 1540 of the text last cited, the author declares that separately located contiguous claims may not be subsequently purchased and consolidated so as to exempt the holder from performing more than $100 worth of work on the entire tract. He says in that regard:

''The individual locator of a twenty acre tract must necessarily perform one hundred dollars' worth of labor on his claim annually. By a purchase of other contiguous locations, and thus augmenting his surface area, we do not see how he can be relieved from fulfilling the requirement as to every individual location which may be ultimately grouped and constitute his 'mining claim,' in a colloquial sense. If such a rule were to prevail,—as there is no limit to the number of claims which one may acquire by purchase,—he might hold five hundred or more acres with the aggregate annual expenditure of one hundred dollars, and thus practically defeat the purpose of the law.''

In Revised Statutes of the United States, section 2324 (30 U.S.C.A., p. 147, § 28), it is provided that:

''On each claim located after the 10th day of May 1872, and until a patent has been issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year.''

The same rule applies to both lode and placer claims. (*Carney* v. *Arizona Gold Min. Co.*, 65 Cal. 40 [2 P. 734]; 36 Am.Jur. p. 366, § 115; 2 Lindley on Mines, 3d ed., p. 1534, § 625.)

Section 2314 of the California Public Resources Code, formerly section 1426 of the Civil Code (Stats. 1909, p. 315), provides that:

''The amount of work done or improvements made during each year to hold possession of a mining claim shall be that prescribed by the laws of the United States, to-wit: One hundred dollars annually.''

It follows that the court erred in holding that the respondent was not required to perform more than $100 worth of work annually on the twelve separately located claims even

though it did subsequently purchase and consolidate them for placer mining purpose.

 Nor were the twelve claims composing Union Lot 59A exempt from the performance of annual assessment work as required by the federal and state statutes above referred to, merely because they were actually located prior to May 10, 1872. In the case of *Morgan* v. *Tillottson*, 73 Cal. 520 [15 P. 88], that precise question was determined adversely to the respondent's contention in this case. In that case plaintiffs' predecessors in interest located the placer mining claim in question in 1855, before the enactment of federal statute, section 2324, above referred to. By mesne conveyances the plaintiffs subsequently acquired title thereto. In 1884 they performed annual assessment work of the value of only $26. In January, 1885, the defendants relocated the claim and thereafter performed all assessment work required by law. Plaintiffs commenced an action against the defendants to recover possession of the claim. The trial court determined the case in favor of the plaintiffs. On appeal that judgment was reversed on the ground that plaintiffs forfeited their title and right to possession of the claim for failure to perform annual work on the claim in the year 1884, of the value of $100, as required by the federal statute. By reference to the briefs filed in the Supreme Court in that case, we find that the very question as involved was to whether the performance of annual assessment work on claims which are located prior to May 10, 1872 is required. In the petition for rehearing we find this statement:

"There is but one point in the cause, and that is sharply outlined in the record. . . .

"The claim in question is a *placer* mining claim; it was located *prior* to May 10, 1872.

"Does the law of Congress (Sec. 2324, Rev. Stat.), require annual expenditures upon such placer mining claims located prior to its enactment (May 10, 1872)?"

On the authority of that case we are bound to conclude that the federal and state statutes requiring the performance of annual work on placer mining claims apply to claims which were located prior to May 10, 1872, exactly as they do to those which are subsequently located.

 It is true that the law does not favor forfeitures. (17 Cal.Jur. 388, § 71.) The burden was on the plaintiffs,

as the subsequent relocators of the claims included in Union Lot 59A, to prove affirmatively by clear and satisfactory evidence, that the respondent forfeited its claims for failure to conform to the law. (*Callahan* v. *James,* 141 Cal. 291 [74 P. 853]; *Quigley* v. *Gillett,* 101 Cal. 462 [35 P. 1040]; *Goldberg* v. *Bruschi,* 146 Cal. 708 [81 P. 23]; *Musser* v. *Fitting,* 26 Cal.App. 746 [148 P. 536]; *Richen* v. *Davis,* 76 Ore. 311 [148 P. 1130]; 40 C.J. 846, § 306; 30 U.S.C.A. 205, notes 366 and 367.) But the uncontradicted evidence in this case shows that the defendants did not perform the annual labor required by law for the specified years prior to the plaintiffs' location of the claims in 1930, as the court found. We assume that fact is conceded. It is not disputed. Regardless of which side furnished that proof of failure to perform the annual assessment work, it is clearly and satisfactorily established and fully meets the requirements of the law with respect to the burden of proof. It follows that respondent's failure to perform the required assessment work resulted in a forfeiture of its title to the claims in question, and that the claims thereupon became "open to relocation in the same manner as if no location of the same had ever been made." (U.S.Rev.Stat., § 2324.)

■ When a case is tried on the theory that $100 worth of annual labor on a particular claim was actually performed, and the evidence supports that fact, the title to that particular claim may not be deemed to have been forfeited, merely because the labor performed is insufficient to cover the statutory requirement and may not inure to the benefit of other contiguous claims in a group. (*Utah Standard Mining Co.* v. *Tintic Indian Chief Mining & Milling Co.,* 73 Utah 456 [274 P. 950, 956]; *McGarrity* v. *Byington,* 12 Cal. 426; 30 U.S.C.A. 200, note 324.) That principle is raised for the first time in this case on petition for rehearing. We are directed to no evidence to sustain a finding that $100 worth of work was performed on a particular claim. The case was tried on the sole theory that $100 worth of annual work was adequate for the entire consolidated group of twelve claims designated as "Union Lot 59A." We are of the opinion we are not authorized to remand the case for trial on a theory entirely different from that upon which it was tried. The principle is not applicable under the circumstances of this case.

That portion of the judgment from which this appeal was perfected is reversed and the court is directed to render judgment in favor of plaintiffs quieting title in them to the placer mining claims included in Union Lot 59A, as prayed for.

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied May 26, 1944, and the opinion was modified to read as above.

Respondent's petition for a hearing by the Supreme Court was denied June 26, 1944.